Argued October 25, reversed and remanded with directions
November 29, 1976

In the Matter of W., a Child.
STATE ex rel JUVENILE DEPARTMENT OF
MARION COUNTY, *Respondent,*
*v.*
G. W., Natural Father, *Appellant.*
(CA 6316)
556 P2d 993

*Raymond M. Ramsay,* Salem, argued the cause for

[ 547 ]

appellant. With him on the brief were Richard C. Stein and Ramsay & Stein, Salem.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

FORT, J.

**FORT, J.**

The father appeals from an order continuing the wardship of his 13-year-old daughter and placing her in the custody of her paternal uncle and aunt.

The daughter, W., lived with her parents, an older sister and two younger brothers until she was five years old. In November 1968 her mother abandoned the family. Her father, unemployed and unable to care for the children, then placed all four children in the home of his brother. In October 1969 the juvenile court granted the uncle's petition to have the children declared wards of the Marion County Juvenile Court and custody awarded to the uncle. (ORS 419.476(1)(e).) All four siblings thereafter lived with their uncle and aunt and their children as a single family unit for five years, until September 1973, when W. was 10 years old.

In October 1969 the parents' marriage was dissolved and custody awarded to the uncle by that decree. In July 1973 the Children's Services Division requested a hearing to consider returning the children to the custody of their mother, who had remarried. Both the Juvenile Department and the Domestic Relations Department by Modification of Order and by Decree, both entered nunc pro tunc August 28, 1973, awarded custody to her but continued the children's wardships in the juvenile court. The children lived with their mother for almost a year, until in July 1974 the Children's Services Division again requested a review of the custody and the orders were modified to award the father temporary custody; again, the wardships were continued in the juvenile court.

In March 1976 the father, then remarried, moved the juvenile court for an order terminating the wardships of the children. Several weeks before the April hearing on his petition, W. left her father's home to live with her uncle and aunt and refused to return. The court found the father to be a fit parent and terminated the wardship of W.'s three siblings. How-

ever, based on the testimony it continued the wardship of W. and returned her custody to her aunt and uncle. The father appeals the court's disposition as to W.

The social history relied upon by the court concerning the best interests of W. was limited to the following apparently unsworn testimony by a representative of the Children's Services Division:

"Q  Have there been any [allegations] since, that the [W's] are unfit parents?

"A  No.

"* * * * *

"Q  Do you know if she is suffering from any nervous disorder or psychological problems?

"A  No. I don't believe she is.

"* * * * *

"Q  Okay, that's the only other two questions I have. Your report states that you recommend termination of wardship for the other three children, is that correct?

"A  Yes.

"Q  So you would consider the [W's] fit parents for those children. You recommended the custody remain with them?

"A  Yes.

"Q  If [W.] had expressed a preference to stay with her father, would your recommendation be different?

"A  Yes.

"* * * * *

"Q  Do you feel [W.] can thrive and mature in the [uncle's] home at the present time?

"A  Yes I do.

"Q  Do you feel that she could live and mature in the [father's] home at the present time?

"A  I don't think so at the present time."

In rendering its decision the court stated:

"* * * We're not attempting to take a child away from her family, but more concerned just for the time being at least it seems to be the best place for the girl. I don't see any question really about the capacity of the natural parents as parents. From my reading this, I don't see any really strong criticism of them. It's more about where does the little girl feel she belongs at the present

time because of the background she's had. She's moved around quite a bit. As I say, in talking with her, I found that she seems to be very happy where she is, especially with that large family of seven kids. She told me that they make up half the Sunday School. She seems very happy. I would think in accordance with what [the Children's Services Division representative] says, at least for the time being, she should stay with her aunt and uncle. * * *"

■ Our review is de novo. ORS 419.561(4). We agree with the court's determination, and indeed it is not disputed, that the father is a fit parent. The issue presented is the validity of the father's contention that, because he is a fit parent and no compelling reasons exist for depriving him of custody, he is entitled to custody of W. as well as the other three siblings, and that no need exists any longer for her remaining a ward of the juvenile court.

■ The general rule is that preference in placement, if a child is within the juvenile court's jurisdiction, is to be given to the natural parent. *State v. Peterson,* 3 Or App 52, 471 P2d 853 (1970); *Prindel v. Collins,* 4 Or App 618, 482 P2d 540 (1971). ORS 419.474(2) provides:

> "The provisions of ORS 419.472 to 419.590, 419.800 to 419.840 and subsection (2) of 419.990 shall be liberally construed to the end that a child coming within the jurisdiction of the court may receive such care, guidance and control, *preferably in his own home,* as will lead to the child's welfare and the best interest of the public, and that when a child is removed from the control of his parents the court may secure for him care that best meets the needs of the child." (Emphasis supplied.)

In *Prindel* we affirmed the court's order which "gave due consideration to that legislatively declared policy" (4 Or App at 620) by awarding custody to the child's fit natural mother rather than continuing custody with the child's paternal grandparents. See also the even more stringent rule in termination of parental rights cases, *Simons v. Smith,* 229 Or 277, 366 P2d 875 (1961); *State v. McMaster,* 259 Or 291, 486 P2d 567 (1971).

Our attention is directed by the parties to *Langenberg v. Steen,* 213 Or 150, 322 P2d 1087 (1958), and *Reflow v. Reflow, Seabert,* 24 Or App 365, 545 P2d 894, Sup Ct *review denied* (1976). In *Langenberg* the Supreme Court considered a custody contest between a fit natural parent and a third person. The mother sought custody of her then 15-year-old daughter who had, from the age of two months, been in the physical custody of the unrelated third person and the legal custody of her father until his death just before that habeas corpus hearing. The court concluded that the child's best interests were served by remaining in the custody of the third person, and stated that its conclusion was "most heavily weighted by the fact that *the only home ever known by this child has been in the home of the defendant.*" (Emphasis supplied.) 213 Or at 152. That is a very different fact situation from the case at bar.

More recently, in *Reflow v. Reflow, Seabert, supra,* this court considered a similar contest over custody. There the mother sought custody of her son and daughter, ages 6 and 8, who had been in the custody of an aunt and uncle for three years. There was testimony that the children had suffered from serious emotional disturbances before being placed in the aunt and uncle's home, were improving there, and that a change in custody could precipitate a major setback in their development. This court stated its

> "* * * belief in the principle that *continuity* in one unchanging family environment, *especially for young children,* is probably the most important single element necessary to a child's wholesome development. * * *" 24 Or App at 373. (Emphasis supplied.)

After surveying cases indicating that under certain circumstances even a fit natural parent may be denied custody, we concluded that the children's best interests dictated continuing custody with the aunt and uncle.

Comparing the present case to *Langenberg* and *Reflow,* we note several crucial differences. Unlike the child in *Langenberg,* W. has spent her first five years

[ 552 ]

with her natural parents, her most recent two years with her father and the year before that with her mother. Thus her aunt and uncle's home is not the only home she has known at length, nor had she even lived in it for the three years prior to the motion to terminate. And, unlike the Reflow children, W. is an adolescent and is not suffering from a nervous disorder or psychological problem making custody with her aunt and uncle critical to her development. While the evidence indicates that W. feels she would be happier living in her aunt and uncle's home than in her father's, that does not alone constitute a compelling reason sufficient to deprive her natural father, concededly a fit and proper parent, of her custody. And we note that to award her custody to her aunt and uncle would separate her from her siblings, who are all in the father's custody. There is no showing that this is in the interest of any of the children who prior to this time have lived together all of their lives. *See: State v. Peterson, supra,* 3 Or App at 56.

We conclude that no compelling reasons have been shown to justify awarding custody of W. to her aunt and uncle at this time. Accordingly, her custody should have remained with her father and her wardship terminated along with that of her siblings.

Reversed and remanded for entry of order consistent with this opinion.