On appellant's petition for reconsideration filed January 12, resubmitted In Banc September 8, reconsideration granted and former opinion (88 Or App 642, 726 P2d 259 (1987)) adhered to November 9, 1988, reconsideration denied January 13, petition for review allowed February 14, 1989 (307 Or 405)
See later issue Oregon Reports

In the Matter of
Brenda Shuree Lauffenberger, A Child.

## STATE ex rel JUVENILE DEPARTMENT OF LANE COUNTY et al,
*Respondents,*

*v.*

## LAUFFENBERGER,
*Appellant.*

(84-024; CA A42206)

764 P2d 568

Charles S. Spinner, Eugene, for petition.

No appearance *contra.*

GRABER, J.

Deits, J., concurring.

Newman, J., dissenting.

## GRABER, J.

Father petitions for reconsideration of our opinion in *State ex rel Juv. Dept. v. Lauffenberger,* 88 Or App 642, 746 P2d 259 (1987), which affirmed the juvenile court's decision to grant custody of his child to the maternal grandparents, subject to father's right of visitation. He argues that we applied the wrong standard when we stated that "it is in the best interests of the child to remain with her grandparents." 88 Or App at 646.[1] We grant the petition in order to reconsider our decision in the light of *Hruby and Hruby,* 304 Or 500, 738 P2d 977 (1987), which was decided after our initial opinion in this case. We adhere to our original opinion.

■ Our original opinion cited ORS 419.474(2)[2] as the governing standard and said that the statute imposes a "best interests of the child" test. *State ex rel Juv. Dept. v. Lauffenberger, supra,* 88 Or App at 645. We hold that ORS 419.474(2) and ORS 419.507(1)[3] are the governing law, that those statutes establish a "best interests" standard, and that nothing in *Hruby and Hruby, supra,* changes those principles. That being so, we need only explain why *Hruby* does not apply in order to adhere to our former opinion.

*Hruby* involved a private custody dispute between a parent and a non-parent. In contrast, in the present case, the juvenile court took jurisdiction of the child in 1984 and made

---

[1] In his brief and his petition for review, father also objects to the juvenile court's failure to hear witnesses. The court acted on the basis of representations by counsel for both parties as to what the evidence would show, as well as exhibits and the pleadings, affidavits, and other documents in the court's case file. The court did not, as father apparently would have liked, hear witnesses. However, father did not make that objection to the juvenile court. Therefore, we need not address it on appeal.

[2] ORS 419.474(2) provides:

"The provisions of ORS 419.472 to 419.597, 419.800 to 419.839 shall be liberally construed to the end that a child coming within the jurisdiction of the court may receive such care, guidance and control, preferably in the child's own home, as will lead to the child's welfare and the best interest of the public, and that when a child is removed from the control of the parents of the child the court may secure for the child care that best meets the needs of the child."

[3] ORS 419.507(1) provides:

"A child found to be within the jurisdiction of the court as provided in ORS 419.476(1), may be made a ward of the court. Where a child has been found to be within its jurisdiction, and when the court determines it would be in the best interest and welfare of the child, the court may:

"[Make various placements and direct legal custody of the child.]"

her a ward of the court in early 1985. She was committed to the legal custody of CSD, which placed her with her grandparents under supervision by CSD. *See generally* ORS 419.507. When the juvenile court took jurisdiction, pursuant to ORS 419.476(1)(e),[4] it found that the child's physical and emotional needs were not being met.[5] ORS 419.500. The juvenile court's decisions to take jurisdiction, to make the child a ward, and to place her in the temporary custody of CSD have not been challenged directly, nor have the findings that underlie those decisions.[6]

■    Juvenile court jurisdiction, wardship, and CSD custody mean two things. First, they mean that the juvenile court statutes, rather than the common law that was the subject of *Hruby,* dictate the basis for a custody decision. Second, they mean that, even if the common law is pertinent, the predicate finding that the child's basic needs were not met by her parents weakens, and perhaps destroys altogether, the "compelling" presumption in their favor on which *Hruby* rests and on which father relies here. The court in *Hruby* appeared to recognize both distinctions:

> "In child custody disputes between natural parents *and other private parties,* this court early resolved the tension between the custodial rights of natural parents and the *parens patriae* power of the state by applying some variant formulation of the rule that a natural parent was entitled to the custody of his or her children *unless that parent was unfit or unable to care for the children properly; absent such a threat to the children's welfare,* their interests, much less the interests of nonparents seeking their custody, were of no concern.[4]

---

[4] ORS 419.476(1)(e) provides:

"(1) The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and

"* * * * *

"(e) Either the person's parents or any other person having custody of the person have abandoned the person, failed to provide the person with the support or education required by law, subjected the person to cruelty or depravity or to unexplained physical injury or failed to provide the person with the care, guidance and protection necessary for the physical, mental or emotional well-being of the person * * *."

[5] The juvenile court jurisdictional petition alleged in one paragraph that both parents had failed to provide for the child's physical and emotional needs and in two other paragraphs that mother had failed to provide for those needs. The court found that the jurisdictional allegations of the petition had been proved but did not, and needed not, specify on which ones it relied.

[6] Of course, in this proceeding, initiated by CSD pursuant to ORS 419.576, father asked the juvenile court to place the child in his home.

"[4] *Cf.* ORS 419.476(1) (definition of children within jurisdiction of juvenile court) * * *." 304 Or at 506. (Emphasis supplied.)

■ In other words, after the child has been "removed from the control of the parents," ORS 419.474(2), and has become a ward of the court, ORS 419.507(1), the presumption in favor of the biological parents ceases to apply. Presumably those events occurred because the child was at risk. *See Hruby and Hruby, supra,* 304 Or at 510. At a minimum, *Hruby* left open the question of whether it applies to juvenile proceedings and did not invite the use of "compelling reasons" as the controlling standard in such proceedings.

Moreover, the *Hruby* court explained that ORS 109.119, the statute that allowed the non-parents in both *Hruby* and this case to intervene, is procedural only and does not alter the substantive law regarding who should have custody of the child. 304 Or at 515. By contrast, ORS 419.474(2), although general in nature, applies substantively to the "care, guidance and control" of this child. Similarly, ORS 419.507(1) states a substantive rule for placement of a child who is a ward of the court.

■ Father argues that the phrase "preferably in the child's own home," in ORS 419.474(2), creates a preference for him that parallels the common law preference expressed in *Hruby.* We disagree. The statute suggests continuity for the child, but the phrase in question does *not* mention the parents.[7] The child is now eight-and-a-half; since she was two,

---

[7] This court has not clearly decided whether a "best interests of the child" or a "compelling reasons" standard applies to juvenile court proceedings. *Reflow v. Reflow, Seabert,* 24 Or App 365, 545 P2d 894, *rev den* (1976), used "best interests," while *State ex rel. Juv. Dept. v. G.W.,* 27 Or App 547, 556 P2d 993 (1976), used "compelling reasons." In each case, however, we awarded custody of the child to the party in whose home the child was living at the time the proceeding was initiated. In *Reflow,* we expressly noted "that continuity in one unchanging family environment, especially for young children, is probably the most important single element necessary to a child's wholesome development." 24 Or App at 373. *G.W.* also emphasized continuity in its analysis. 27 Or App at 553. In *Reflow,* the child was living with non-parents, to whom we awarded custody; in *G.W.,* it was the father in whose home the child lived who obtained custody. *G.W.* is also factually distinguishable from the present case in additional respects; for example, the child's three siblings had been awarded to the father, and the sole basis for the trial court's award of custody to an aunt and uncle appears to have been the child's preference. Our original opinion in this case, similarly, relied on the juvenile court's explanation that its custody decision "was based on the need for stability and continuity." *State ex rel Juv. Dept. v. Lauffenberger, supra,* 88 Or App at 644.

she has lived in her grandparents' home continuously, and, even before that, she spent much of her time there. The child's "own home" is her grandparents' home.

Two themes permeate ORS chapter 419. First, before the aid of the juvenile court can be invoked, it must be proved that the parents have failed their child. Second, and consequently, the best interests of that neglected or damaged child are the court's compass in its intervention. The statutes thus reflect a tension between competing values: unity of the nuclear family and welfare of the child. The juvenile court must weigh all appropriate factors—such as the child's age and sex, the problem that led to the juvenile court proceeding, the level of parental cooperation with treatment plans, and continuity of placement—none of which has a "compelling" priority over other factors. To hold that a "compelling reasons" standard applies, as the dissent urges, would be to change direction and run contrary to the course that the legislature has set.

In summary, *Hruby* does not apply. ORS 419.474(2) and ORS 419.507(1) do. ORS 419.474(2) directs the juvenile court to promote "the child's welfare" and to "secure for the child care that best meets the needs of the child." ORS 419.507(1), which governs placement of children who are made wards of the court, requires the juvenile court to place the child where "it would be in the best interest and welfare of the child." The juvenile court applied that standard, and so did our original opinion. For that reason, we adhere to that opinion.

Reconsideration granted; former opinion adhered to.

**DEITS, J.,** concurring.

I concur with the majority opinion of Judge Graber that, under ORS 419.474(2) and ORS 419.507(1), the applicable standard in this case is the "best interests of the child" and that, under that standard, the child should remain with her grandparents. However, in my opinion, even if the test is not "best interests of the child," and the standard articulated in *Hruby and Hruby,* 304 Or 500, 738 P2d 977 (1987), applies, the result should be the same.

In *Hruby,* the court established the standard for determining custody involving a natural parent and a third

party: The natural parent should have custody unless there is a compelling reason not to award custody to the parent. The court recognized that the standard for determining custody in this type of case has varied considerably and has not been precisely articulated. The standard, sometimes used in the past, that a natural parent must be shown to be unfit before custody will be denied, was clearly rejected. The court also rejected the standard at the other end of the spectrum, "the best interests of the child," which allows consideration only of the needs of the child. Instead, the court adopted a test between those two extremes: A fit parent is entitled to custody unless there are "compelling reasons" for placing the child in the custody of another. The court explained:

> "We do not use the adjective 'compelling' in an effort to provide more precision to our holding through the use of that word in other contexts. We might have as easily used words such as 'good cause,' *Ex parte Barnes, supra,* 54 Or at 550, or 'most cogent,' *Gheen v. Gheen, supra,* 247 Or at 19. Because of the variety of circumstances in which custody disputes arise, any standard for determining custody will of necessity be somewhat vague. We use 'compelling' to emphasize that in a custody dispute between a natural parent and some other person, a court should not be concerned with attempting to maximize a child's welfare, but with determining whether the child will receive adequate care and love from its natural parent and whether the child will be otherwise unduly harmed, physically or psychologically, by giving custody to the natural parent." 304 Or at 510.

The circumstances of this case are quite distinguishable from the facts in *Hruby*. In that case, the parents separated two months after the child's birth. Because neither parent was then able to care for the child, the father placed the child with his sister. The father sought and obtained custody of the child in the dissolution judgment. He was in the Navy and was stationed in a succession of West Coast cities. Because of that, his sister continued to care for the child. However, he visited the child frequently and regularly paid his sister support for the child. Even though the child developed a parent-child relationship with her aunt and uncle, she also had an emotional attachment to her father. In 1985, the father remarried and sought to regain physical custody of his child. The court concluded that there was no compelling reason not to give him custody and did so.

In this case, the child was with her parents for approximately the first two years of her life. However, during that time, she stayed with her maternal grandparents for extended periods of time. After the parents separated in 1982, she began living with the grandparents permanently. Father entered the military service in March, 1983. Both before entering the military and during his service, he had very limited contact with the child. In January, 1984, CSD filed a petition seeking jurisdiction over the child, alleging that both parents had failed to provide for her physical and emotional needs and that she was suffering from emotional problems resulting from the lack of a stable parent figure and a stable living situation. Father was aware of that proceeding and the concerns of CSD. He appeared at the first hearing on the matter. However, he did not appear at any subsequent hearings.[1] In April, 1984, the trial court placed the child in the temporary custody of the grandparents. In August, 1984, the court held that the jurisdictional allegations in CSD's January, 1984, petition were proven and found the child to be within the jurisdiction of the court.

In September, 1984, CSD began writing to father, asking him to participate in the development of a permanent plan for the child. In June, 1985, CSD wrote to him:

"The purpose of this letter is to emphasize Children's Services Division's eagerness to work with you so that you may be in a position to provide a permanent home for Brenda. It is imperative that a permanent home, preferably with her parent, be found for her soon.

"In the past few months I have mailed six letters. You have responded to only one. I made arrangements to have Children's Services in Umatilla County work with you and you did not show for their appointments. I set up a visitation schedule; as you requested, and you appeared for only one visit. I arranged to meet with you on a Saturday, which was the time you suggested and you did not appear. I am very concerned with your overall lack of progress and your lack of follow through with commitments you have made. Time is running out and this pattern must not continue if you expect to regain custody of Brenda!

---

[1] Father appeared at the first hearing and requested the appointment of counsel. The affidavit supporting the request showed his military pay to be $900 per month. His request was denied.

"As I have stated previously, you have the right to a review hearing if you disagree with Children's Services Division's actions or wish Court clarification of an issue regarding your child. Please inform me if you wish to have a hearing scheduled. In addition, please be advised that you have the right to have an attorney. If you are without funds, one can be appointed to represent you.

"*IF I DO NOT HEAR FROM YOU BEFORE JULY 15, 1985,* to develop a plan for Brenda I WILL FILE A TERMINATION OF PARENTAL RIGHTS PETITION, in order to free Brenda for adoption." (Emphasis in original.)

CSD did file a petition to terminate father's parental rights, but, in April, 1986, the court denied the petition. In that proceeding, CSD recommended that custody remain with the grandparents.

Father also failed to provide financial support for the child. While in the military service he provided support only after CSD secured a military allotment for the child. During the six months after leaving the service in January, 1986, he had provided only $100 to the grandparents.

Although father was aware of CSD's serious concerns about the welfare of his daughter, which eventually resulted in her being made a ward of the court, he did virtually nothing. The only explanation he offered as to why he did not maintain contact with the child or participate in CSD's planning for her was that he was in the military service on a secret mission. As explained by his attorney in a memorandum accompanying father's trial court motion to reconsider: "Father was assigned to a secret mission, on 24-hour call and could not travel more than 50 miles without advance permission." However, even assuming that father's ability to travel was limited, he failed to maintain any contact with his child or CSD.[2]

Applying the *Hruby* standard, I conclude that father's lack of commitment to or interest in his child's well being for a substantial period constitutes a compelling reason not to give

---

[2] The dissent does not dispute that father's absence or failure to provide support occurred, but asserts that we should not use that against father because, on this limited record, we do not know the reasons for father's actions. However, father had the opportunity to offer an explanation of his conduct at the hearing. Although, as the dissent points out, the trial court limited the hearing, father did not object to the procedures and did not attempt to offer evidence.

custody to him.[3] Just as a parent's inadequate care of a child may support a conclusion that giving that parent custody would be harmful, a parent's total lack of care or concern for a child for an extended period of time may also support that conclusion. Father's almost total absence from this child's life for an extended period outweighs his current good intentions. Father's track record of care and concern for his daughter, considered together with the fact that father's absence has resulted in the development of a stable living situation for her with the grandparents, convince me that "the child [would not] receive adequate care and love from his natural parent" or that the child would be otherwise "unduly harmed, physically or psychologically by giving custody to the natural parent." *Hruby and Hruby, supra,* 304 Or at 511.

The dissent completely disregards father's past history:

"Father's past inattentiveness toward his child is not determinative of his present intentions and abilities. Under *Hruby,* we should evaluate father's current capacity and intentions."[4]

Although it cannot be assumed that a person who has not properly carried out parental responsibilities in the past will never reform, the "track record" is highly relevant to determining whether he can provide adequate care and love to the child now. Our decision here, as in most cases, must be based on what has occurred in the past, regardless of how much we would like to believe a parent's promise to "do better next time."

Because our previous decision is consistent with the Supreme Court's recent clarification of the standard applicable in a custody dispute between a natural parent and a third

---

[3] The dissent errs in its application of the *Hruby* standard by deciding that, because the father in this case is presently "fit," there is no compelling reason not to award him custody. Parental fitness, however, is not the appropriate standard. Under *Hruby,* a fit parent may be denied custody if there is good cause to do so.

[4] The dissent characterizes father's behavior as "inattentiveness." I question whether, if a mother had acted as father has in this case, having had virtually no contact with his child, having failed to provide any nurturing whatsoever for the child and having failed to cooperate in a meaningful way with CSD, her behavior would be called "inattentiveness."

party, I would allow the petition for reconsideration and adhere to our former decision.

Richardson, J., joins in this concurring opinion.

**NEWMAN, J.,** dissenting.

In our original opinion, *State ex rel Juv. Dept. v. Lauffenberger,* 88 Or App 642, 746 P2d 259 (1987), we erroneously relied on a standard of the "best interests of the child." The majority, on reconsideration, continues that error. It erroneously asserts that because the child is a ward of the juvenile court, the Supreme Court's decision in *Hruby and Hruby,* 304 Or 500, 748 P2d 57 (1987), does not apply.[1] Under *Hruby,* in a dispute between the natural father and the maternal grandparents, the court should give custody to the natural father, even though the child is a ward of the court, absent a "compelling reason" to the contrary. We should withdraw our original opinion, reverse the trial court and award custody to the father.

*Hruby* states:

"We conclude from the foregoing that under the 'principles of common law and equity,' as further developed by legislation and the decisions of this court, *a natural parent has the right to the custody of his or her children, absent a compelling reason for placing the children in the custody of another; the 'best interests of the child' standard applicable to custody disputes between natural parents in a marriage dissolution proceeding is not applicable to custody disputes between natural parents and other persons.* We do not use the adjective 'compelling' in an effort to provide more precision to our holding through the use of that word in other contexts. We might have as easily used words such as 'good cause,' *Ex parte Barnes, supra,* 54 Or at 550, or 'most cogent,' *Gheen v. Gheen, supra,* 247 Or at 19. Because of the variety of circumstances in which custody disputes arise, any standard for determining custody will of necessity be somewhat vague. *We use 'compelling' to emphasize that in a custody dispute between a natural parent and some other person, a court should not be concerned with attempting to maximize a child's welfare, but with determining whether the child will receive adequate care and love from its natural parent and whether the child will be otherwise unduly harmed, physically or psychologically, by*

---

[1] The child was made a ward of the court under ORS 419.476(1)(e).

*giving custody to the natural parent.*" 304 Or at 510. (Emphasis supplied.)

To establish a "compelling reason," the evidence must show that the child will *not* receive adequate care and love from its natural parent or will be unduly harmed physically or psychologically by giving custody to the natural parent. The burden is on the party who seeks to deprive the natural parent of custody.

The juvenile court took jurisdiction of the child in 1984. It made her a ward of the court in 1985 and gave temporary custody to CSD. The majority recognizes that that disposition was temporary. 93 Or App at 760. *See* ORS 419.576. Then, after completion of CSD's unsuccessful proceeding in April, 1986, to terminate father's parental rights, the court conducted the dispositional hearing from which father appeals. The grandparents intervened under ORS 109.119 and asked for custody. Father asked that the child be placed in his custody. CSD recommended that the court place the child in the grandparents' custody. The prior jurisdictional rulings do not change the fundamental dispositional issue—whether father or the maternal grandparents should have custody.

The language of *Hruby* is broad:

"In child custody disputes between natural parents and other private parties, this court early resolved the tension between the custodial rights of natural parents and the *parents patriae* power of the state by applying some variant formulation of the rule that a natural parent was entitled to the custody of his or her children unless that parent was unfit or unable to care for the children properly; absent such a threat to the children's welfare, their interests, much less the interests of non-parents seeking their custody, were of no concern." 304 Or at 506.

Father, as the natural parent, still has a preferential right to custody. His rights also have constitutional underpinnings. "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky v. Kramer,* 455 US 745, 753, 102 S Ct 1388, 71 L Ed 2d 599 (1982); *see also State v. McMaster,* 259 Or 291, 486 P2d 567 (1971). The proceeding under ORS 419.476(1)(e) that made

the child a ward of the juvenile court did not terminate father's parental rights. Indeed, in the termination proceeding in April, 1986, the court dismissed CSD's petition to terminate father's parental rights.

Without citation of authority, the majority erroneously holds that "after the child has been 'removed from the control of the parents,' ORS 419.474(2), and has become a ward of the court, ORS 419.507(1), the presumption in favor of the biological parent ceases to apply." 93 Or App at 761. Then it quickly backs away from this assertion, stating that "at a minimum, *Hruby* left open the question of whether it applies to juvenile proceedings." 93 Or App at 761. The *Hruby* standard, however, applies even if the child is a ward of the juvenile court, CSD has temporary custody and recommends that the third parties—the grandparents—receive custody.[2] Contrary to the majority's assertion, the natural parent's right to a custody preference against third parties does not disappear if the juvenile court finds that the child is within its jurisdiction.

ORS chapter 419.474(2)[3] recognizes the natural parent's preference when it states that placement is to be "preferably in the child's own home." In *State ex rel Juv. Dept. v. G.W.,* 27 Or App 547, 551, 556 P2d 993 (1976), we stated:

"The general rule is that preference in placement, if a child is within the juvenile court's jurisdiction, is to be given to the natural parent. *State v. Peterson,* 3 Or App 52, 471 P2d 853 (1970); *Prindel v. Collins,* 4 Or App 618, 481 P2d 540 (1971). [*Former*] ORS 419.474(2) provides:

'The provisions of [*former*] ORS 419.472 to 419.590, 419.800 to 419.480 and subsection (2) of 419.990 shall be liberally construed to the end that a child coming within

---

[2] *Hruby* states that ORS Chapter 419, the juvenile court statute, also implicitly recognizes the natural parent's common law right to custody of his children. 304 Or at 505 n 3.

[3] ORS 419.474(2) provides:

"The provisions of ORS 419.472 to 419.597, 419.800 to 419.839 shall be liberally construed to the end that a child coming within the jurisdiction of the court may receive such care, guidance and control, preferably in the child's own home, as will lead to the child's welfare and the best interest of the public, and that when a child is removed from the control of the parents of the child the court may secure for the child care that best meets the needs of the child."

the jurisdiction of the court may receive such care, guidance and control, *preferably in his own home,* as will lead to the child's welfare and the best interest of the public, and that when a child is removed from the control of his parents the court may secure for him care that best meets the needs of the child.' (Emphasis supplied.)

"In *Prindel,* we affirmed the court's order which 'gave due consideration to that legislatively declared policy' (4 Or App at 620) by awarding custody to the child's fit natural mother rather than continuing custody with the child's paternal grandparents."

Moreover, although ORS 109.119, under which the grandparents intervened here and the aunt intervened in *Hruby,* refers to the "best interests of the child," *Hruby* nevertheless adopted a standard of "compelling reason."

The majority erroneously asserts that the grandparents should get custody now because the juvenile court found that the child's emotional and physical needs were not being met in 1985, when it made the child a ward of the court. 93 Or App at 760. In *this* proceeding in 1986—the dispositional proceeding—*the court found that the father was fit.* Moreover, it did not find or believe that the child would not receive adequate care or love from father or would be unduly harmed by placement with him. It stated that it could "just as easily" have awarded custody to father and that "that is the best interest for this child."[4]

---

[4] The trial court stated:

"You see, [the grandparents] have a track record, and if you bet on a horse and you bet on one that ran eight races and won all eight races then you feel pretty safe putting a couple of bucks on the nose on that one.

"[Father] has no track record, so we are going to find out, ladies and gentlemen. We are going to find out whether these folks up in Salem are going to fish or cut bait. *I find that [father] is a fit parent for the child * * * to be placed with him as a result of this proceeding. I further find so that * * * his family and where the child would be residing that they would also be fit for this child. A fit place for this child to reside and to reside with.

"* * * * *

"Further, I am going to find that it is in the best interest of this little girl * * * that her care, custody and control be with the grandparents and that she remain with them and that she be under the supervision of Childrens Services Division. This thing could be taken either way and I will explain to you why I am taking it this way, and I'm sure the lawyers know it is because of what I have said about stability. *Just as easily I could have said that the child would go to [father and his wife] and that is the best interest for this child.* If that was wrong, then the child would be moved back from [father's] to the [grandparents']. We don't want that to happen because if I am wrong I want there to be only one move, and that is a move and that will be a permanent move." (Emphasis supplied.)

Father's *past* inattentiveness toward his child is not determinative of his present intentions and abilities.[5] Under *Hruby,* we should evaluate father's current capacity and intentions. He has attended parenting classes and has otherwise cooperated with CSD. He has created a stable home environment with his new wife and children. The record suggests strongly the conclusion that father has matured.

The reason that the trial court gave for awarding custody to the grandparents was that they could best provide the child with a stable home. Yet in *Hruby,* where the child also had not known a home with the father, the court stated:

> "[C]ourts will deprive natural parents of the custody of their children only in order to protect the children from some compelling threat to their present or future well-being. Apart from these concerns, it is irrelevant to the court's custody determination that the children might have a better home or might have greater financial, educational or social opportunities in the custody of another." 304 Or at 509.

The record here does not show a "compelling reason" to deny father custody of his own child.

In our original opinion, we erroneously applied a "best interests of the child" standard. The majority opinion on reconsideration continues that error. We should have given, and should now give, preference to father over the grandparents, because a compelling reason to the contrary is absent.

I dissent.

Buttler and Warden, JJ., and Van Hoomissen, Judge pro tempore, join in this dissent.

---

[5] Father asserted that he did not provide child support, because his allotment went to the child's mother, while her parents had custody of his daughter. He also stated that his "top-secret" postings made it difficult for him to attend CSD and Support Division hearings. In response to CSD inquiries regarding placement and custody of his daughter, he stated that he would not consent to an adoption but that in early 1985 he did not consider himself to be an appropriate placement for his daughter, because he had to travel back and forth between Maryland and Oregon on his military duties.