Argued and submitted April 4, the decision of the Court of Appeals reversed and
judgment of the circuit court reversed and case remanded to the circuit court for
further proceedings July 13, 1989

In the Matter of
Brenda Shuree Lauffenberger, a Child.

STATE ex rel JUVENILE DEPARTMENT OF
LANE COUNTY et al,
*Respondents on Review,*

*v.*

LAUFFENBERGER,
*Petitioner on Review.*

(TC 84-024; CA A42206; SC S35786)

777 P2d 954

Charles S. Spinner, Eugene, argued the cause and filed the
petition for petitioner on review.

Marc D. Perrin, of Joseph & Perrin, P.C., Eugene, argued
the cause and filed a response for respondents on review Mer-
ton Menge and Mary Menge.

Dave Frohnmayer, Attorney General, Virginia L. Linder,

Solicitor General, and Jerome Lidz, Assistant Attorney General, filed an *amicus curiae* brief for respondents on review Children's Services Division.

Before Peterson, Chief Justice, and Linde, Carson, Jones, Gillette and Fadeley, Justices.

LINDE, J.

**LINDE, J.**

The legal issue in dispute is whether "best interests of the child" is the proper standard for a juvenile court's placement of a child with the child's father or third parties.

In 1984 Brenda Shuree Lauffenberger, then four years old, became a ward of the juvenile court on grounds of parental neglect. ORS 419.476(1)(e).[1] At the time of the court's order, the parents were divorced, the father was in military service, and Brenda lived with her mother's parents, Mr. and Mrs. Menge. The juvenile court placed Brenda in the Menges' physical custody with legal custody in the Children's Services Division (CSD). In 1985 CSD filed petitions to terminate the parental rights of both parents, which the court denied in 1986. Judge Woodrich found the father, who had left the service and was remarried and employed, to be a fit parent. The petition against Brenda's mother was dismissed without prejudice.

After a subsequent dispositional hearing, ORS 419.476, Judge Allen entered an order vacating the child's commitment to the custody of CSD, retaining the court's jurisdiction, and placing Brenda in the Menges' "care, custody and control," with visitation rights for her father. The order recited "findings of fact" that "the father was a fit parent for the child to be placed with him," that his wife, immediate family, and residence were "a fit residence for the child," and that "it is in the best interests of the child that her care and custody and control remain with the maternal grandparents, subject to the supervision of the Children's Services Division."

On the father's appeal, a panel of the Court of Appeals affirmed the order on *de novo* review. ORS

---

[1] ORS 419.476(1)(e) provides:

"The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"* * * * *

"(e) Either the person's parents or any other person having custody of the person have abandoned the person, failed to provide the person with the support or education required by law, subjected the person to cruelty or depravity or to unexplained physical injury or failed to provide the person with the care, guidance and protection necessary for the physical, mental or emotional well-being of the person[.]"

419.561(4). *State ex rel Juv. Dept. v. Lauffenberger,* 88 Or App 642, 746 P2d 259 (1987).[2] The court agreed with the juvenile court that, although the father was a fit parent, it was "in the best interests of the child" to remain with the Menges because of the child's need for the stability and continuity provided by the home in which she had lived "nearly her entire life." 88 Or App at 646. Upon reconsideration *in banc* after this court's intervening decision in *Hruby v. Hruby,* 304 Or 500, 748 P2d 57 (1987), the Court of Appeals again affirmed the order, although by a divided court. *State ex rel Juv. Dept. v. Lauffenberger,* 93 Or App 757, 764 P2d 568 (1988).

Recognizing that the standard stated in *Hruby* was more favorable to parental custody than the neutral phrase "best interests of the child," the majority opinion distinguished *Hruby* because the present case involved a ward of the juvenile court rather than a private custody dispute. The majority again held the "best interests" test applicable, citing ORS 419.474(2) and ORS 419.507(1), and affirmed the original panel decision under that standard. Two members of the court, in a concurring opinion, stated that the juvenile court's order was proper even if *Hruby's* preference for parental custody were the governing standard. 93 Or App at 762 (Deits, J., concurring). In a dissenting opinion, four members of the court maintained that *Hruby* required a "compelling reason" for denying a fit parent custody of his child in a juvenile court proceeding as well as in private custody disputes between parents and nonparents, placing the burden on the party opposing parental custody to show that the child would not receive adequate care and love or would be psychologically or physically harmed by giving custody to the natural parent, and they concluded that this had not been shown here. 93 Or App at 767 (Newman, J., dissenting).

*Hruby v. Hruby* was a dispute between a father, who was awarded custody of his child upon dissolution of the parents' marriage, and the father's sister, who had cared for the child during its first four years while the father was in the

---

[2] There is no apparent explanation for the style chosen for the title of this case. ORS 419.484 specifies that in juvenile courts, "[t]he petition and all subsequent court documents shall be entitled, 'In the matter of ＿＿＿＿＿＿＿＿＿＿, a child.'"

United States Navy. After the father reclaimed physical custody of the child, the aunt intervened in the original dissolution proceeding pursuant to ORS 109.119 (which permits such intervention by any person "who has established emotional ties creating a child-parent relationship with a child") and sought legal custody of the child. Justice Lent's opinion for this court made two points. First, ORS 109.119 provides only procedural rights to persons who claim the specified emotional relationship with the child; the statute does not establish or change substantive custodial rights. Second, in "child custody disputes between natural parents and other private parties," a long history of Oregon cases established that natural parents were entitled to keep custody of their children in the absence of what the opinion, for short, called "compelling" or "cogent" reasons to the contrary. 304 Or at 506, 510.

The *Hruby* opinion took care to point out that these adjectives were not words of art to be recited by trial judges but an explanation of what determination must be made in such a dispute. The dissenters in the Court of Appeals relied on this passage:

> "We conclude from the foregoing that under the 'principles of common law and equity,' as further developed by legislation and the decisions of this court, a natural parent has the right to the custody of his or her children, absent a compelling reason for placing the children in the custody of another; the 'best interests of the child' standard applicable to custody disputes between natural parents in a marriage dissolution proceeding is not applicable to custody disputes between natural parents and other persons. We do not use the adjective 'compelling' in an effort to provide more precision to our holding through the use of that word in other contexts. We might have as easily used words such as 'good cause,' *Ex parte Barnes,* [54 Or 548, 550, 104 Pac 296 (1909)], or 'most cogent,' *Gheen v. Gheen,* [247 Or 16, 19, 426 P2d 876 (1967)]. Because of the variety of circumstances in which custody disputes arise, any standard for determining custody will of necessity be somewhat vague. We use 'compelling' to emphasize that in a custody dispute between a natural parent and some other person, a court should not be concerned with attempting to maximize a child's welfare, but with determining whether the child will receive adequate care and love from its natural parent and whether the child will be otherwise unduly harmed, physically or psychologically, by giving custody to the natural parent."

304 Or at 510-11. The dissenters note the absence of a finding that the child would not receive adequate care or love from its father or would be harmed by being placed in his custody. Although the juvenile court had found that the child's emotional and physical needs were not being met in 1985, when the child first was made a ward of the court, the court later had found that the father was fit to have custody. 93 Or App at 770.

As already stated, the majority opinion in the Court of Appeals held the *Hruby* preference for parental custody inapplicable in juvenile court proceedings, citing the standards stated in ORS 419.474(2) and ORS 419.507(1). The first of these sections, phrased as a preliminary rule for construing the juvenile court statutes, does not use the phrase "best interests of the child." Instead it provides:

> "The provisions of ORS 419.472 to 419.597, 419.800 to 419.839 shall be liberally construed to the end that a child coming within the jurisdiction of the court may receive such care, guidance and control, preferably in the child's own home, as will lead to the child's welfare and the best interest of the public, and that when a child is removed from the control of the parents of the child the court may secure for the child care that best meets the needs of the child."

ORS 419.474(2). The statement prefaces a statute that covers children who have committed unlawful acts (what once were called "delinquent" children) as well as dependent or mistreated children, and that allows a child to be removed from "the child's own home" and from "the control of the parents" for the "best interests of the public" as well as for the child's own good. The objectives stated in ORS 419.474(2) must be understood in these different contexts.

The phrase "best interest of the child" does appear in ORS 419.507(1), where it introduces a long list of steps that a juvenile court may take when a child "is found to be within its jurisdiction, and when the court determines it [*i.e.*, the court's action] would be in the best interest and welfare of the child." The list covers such matters as probation, protective supervision, payment of penalties or restitution, and performance of personal or community service by the child as well as decisions on legal custody and possible institutional commitment, and it includes counseling for parents whose deficient "parenting skills" have brought the child within the court's jurisdiction.

ORS 419.507(8). In the context of the juvenile court proceeding, where divergent interests of law enforcement, actual or potential victims of a child's misconduct, private or public social agencies and the general public, as well as the interests of the child and its parents may compete, ORS 419.507(1) expresses the legislature's intention to keep the focus on "the best interest and welfare of the child." The statute, however, neither presupposes parental failure nor negates a preference for parental custody. CSD, in a brief *amicus curiae* in this court, cites several statutory provisions in support of that preference, including CSD's obligation to report its efforts to remedy reasons for the child's removal from the parental home so that the child can be returned. ORS 419.576(2)(c), (d).[3]

In sum, the broad goals stated in the juvenile court law to determine and further the child's welfare and best interest do not demonstrate a legislative rejection of the longstanding assumptions about parental custody that were reviewed in *Hruby v. Hruby, supra,* assumptions that not only were longstanding at the time of Oregon's statehood but perhaps were thought to be of constitutional magnitude. *See* Or Const Art I, § 33; *Hruby v. Hruby, supra,* 304 Or at 505 n 3; *cf. Hall v. Northwest Outward Bound School,* 280 Or 655, 661 n 11, 572 P2d 1007 (1977); *see also State v. Burrow,* 293 Or 691, 713, 653 P2d 226 (1982) (Linde, J., dissenting). If there are reasons for overriding the assumption of parental custody, they must be found in the text or context of more specific provisions than the general "best interest" formula. That general formula alone does not distinguish this case from *Hruby,*

---

[3] ORS 419.576(2)(c) and (d) provide:

"(2) The reports required * * * shall be filed by the agency at the end of the initial six-month period and annually thereafter. The agency shall file reports more frequently if the court so orders. The reports shall include, but not be limited to:

"* * * * *

"(c) A description of agency efforts to return the child to the parental home or find permanent placement for the child, including, where applicable, efforts to assist the parents in remedying factors which contributed to the removal of the child from the home;

"(d) A proposed treatment plan or proposed continuation or modification of an existing treatment plan, including, where applicable, terms of visitation to be allowed and expected of parents and a description of efforts expected of the child and the parents to remedy factors which have prevented the return of the child to the parental home * * *."

because the formula equally appears in ORS 109.119(3) as a required part of the facts to be pleaded by a third party seeking custody in a proceeding outside the juvenile court. Moreover, "best interests" include a child's long-term interests as well as its immediate needs. Childhood does not last forever, and a person's relations with his or her natural parents and siblings can be shaped for life by years of separation during childhood. These consequences also must be considered in determining a child's best interests. Sometimes a court may be convinced that the alienating effect of separation is not only justified by a child's immediate needs but even is best in the long run, but when the relationship is not permanently severed by adoption or by termination of parental rights, such a departure from ordinary assumptions about family relationships after childhood requires a firm factual basis.

Although the preference for parental custody recognized in *Hruby* therefore is not inapplicable to juvenile court custody decisions, *Hruby's* qualifying phrase "in a custody dispute between a natural parent and some other person" remains significant. The Court of Appeals rightly perceived a difference between the two settings of custody determinations. The difference arises from the circumstances that made the child a ward of the court, but it concerns procedure and the responsibilities of the participants more than the general formula governing the court's disposition. The juvenile court's disposition is not simply a custody dispute between two parents, or between a natural parent and some other person, as in *Hruby*. Often, as in this case, CSD is involved in initiating the proceeding or is given legal custody of the child, which of course carries with it responsibility for the child's best interests. Also, as already noted, depending on the circumstances giving the juvenile court jurisdiction, interests of third parties, of the general public, and of social agencies as well as of the parties desiring custody, may be involved. Perhaps in many ordinary custody disputes such as *Hruby,* evidence and argument on the child's own best interest can be left to the parties desiring custody, but in juvenile court proceedings it often will be necessary for someone other than potential foster parents or other interested private parties to present an analysis and recommendations for the child.

The record of the present proceeding is sparse. The hearing on July 31, 1986, largely involved previous documents

and oral summaries by counsel for the father and the Menges of what various witnesses would say if they were called. There is no need to set them out here. CSD's caseworker had recommended in May of 1986 that Brenda be placed with her father. In July she recommended placement with the Menges, not, so far as appears, because of an intervening change of circumstances. An attorney for Brenda's mother, who did not appear, read a letter from the mother charging the father with misconduct that should disqualify him from custody and recommending that Brenda be placed with her parents, the Menges. There was no oral testimony or cross-examination, beyond a few brief answers by the father to questions about details. Brenda did not appear to express her own preference and attitude toward her father or the Menges.

At the end of the hearing, the juvenile judge observed that it would be better if the disposition hearing were before the same judge (Judge Woodrich) who had heard the case on termination of parental rights. He noted what he called "a contradiction in terms as far as the law is concerned that you can't reconcile," referring to the "best interest of the child" on the one hand, and on the other to "a concept that we can't get rid of * * * that parents have some kind of property interest in their children. Like owning a Buick car or a house or something." He then found that the father and his new household were fit to have custody of Brenda, but also that it would be in Brenda's best interest to remain in the custody of the Menges, with visitation to her father's family. The order recites these determinations.

From the foregoing, it is clear that the juvenile court was not unaware that its determination of "the best interest of the child" was constrained by the preference for parental custody, although *Hruby* later noted that historically "the custodial right of a father was nothing so crass as a property right," but more "analogous to the right of a trustee, with the children as the *res* of the trust." 304 Or at 506. Deciding the case before *Hruby*, the court made no specific findings with respect to potential harm from parental custody that *Hruby* called for in ordinary private custody disputes nor with respect to any other factors that might play a role under the juvenile court statute. The Court of Appeals panel originally affirmed the order on *de novo* review before this court's opinion in *Hruby*, and two of the six-member majority *in banc*

stated that they would affirm if *Hruby's* standards were applicable.

Under the circumstances, although we reverse the decision of the Court of Appeals, we do not order a change of custody. That will be for the circuit court to decide on remand and on a new and more complete record, if the father still desires custody. Brenda now is nine years old and may have some opinions in the matter. CSD may have new recommendations in view of developments since 1986; objections to discontinuity standing alone do not override the preference for parental custody.

For the foregoing reasons, the decision of the Court of Appeals is reversed, and the case is remanded to the circuit court for further proceedings.