Submitted on record and briefs May 22, affirmed September 23, 1998

In the Matter of C. C., Minor Child.

STATE ex rel STATE OFFICE FOR
SERVICES TO CHILDREN AND FAMILIES,
*Respondent,*

*v.*

Marilyn L. FULLER,
*Appellant.*

(9205-81829N; CA A97093)

964 P2d 1140

Marilyn L. Fuller filed the brief *pro se*.

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Michael C. Livingston, Assistant Attorney General, filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Pursuant to ORS 109.119, the juvenile court allowed Marilyn Fuller to intervene in a dependency proceeding involving a child with whom Fuller had established a child-parent relationship. After Fuller had participated as an intervenor for more than four years, the court entered an order terminating her intervenor status. Fuller has appealed from that order, contending that the court lacked authority to remove her from the proceeding once she had been allowed to intervene. The State Office of Services to Children and Families (SOSCF) argues in response that, once the trial court had determined that Fuller's presence as a party was no longer in the best interests of the child, it had both the authority and the duty to remove Fuller from the case. We conclude that it was within the trial court's discretion to withdraw the order granting Fuller intervenor status and that it did not abuse that discretion.

The relevant facts are as follows. In May 1992, the state filed a dependency petition in the matter of C.C., who was four years old at the time. Fuller was a close friend of C.C.'s paternal grandmother and was well acquainted with the child and her family. Fuller filed a motion to intervene in the proceeding, relying on ORS 109.119.[1] ORS 109.119

---

[1] ORS 109.119 provides:

"(1) Any person, including but not limited to a related or nonrelated foster parent, stepparent or relative by blood or marriage who has established emotional ties creating a child-parent relationship or an ongoing personal relationship with a child, or any legal grandparent may petition or file a motion for intervention with the court having jurisdiction over the custody, placement, guardianship or wardship of that child, or if no such proceedings are pending, may petition the court for the county in which the minor child resides for an order providing for relief under subsection (2) of this section.

"(2)(a) If the court determines that a child-parent relationship exists and if the court determines by a preponderance of the evidence that custody, guardianship, right of visitation, or other generally recognized right of a parent or person in loco parentis, is appropriate in the case, the court shall grant such custody, guardianship, right of visitation or other right to the person, if to do so is in the best interest of the child. The court may determine temporary custody of the child or temporary visitation rights under this paragraph pending a final order.

"(b) If the court determines that an ongoing personal relationship exists and if the court determines by clear and convincing evidence that visitation or contact rights are appropriate in the case, the court shall grant visitation or contact rights to the person having the ongoing personal relationship if to do so

applies to proceedings brought under ORS 419B.100. This is such a proceeding.[2] After a September 1992 hearing, the

is in the best interest of the child. The court may order temporary visitation rights under this paragraph pending a final order.

"(3) In addition to the rights granted under subsection (1) or (2) of this section, a stepparent with a child-parent relationship who is a party in a dissolution proceeding may petition the court having jurisdiction for custody or visitation or may petition the court for the county in which the minor child resides for adoption of the child. The stepparent may also file for post decree modification of a decree relating to child custody.

"(4)(a) A motion for intervention filed by a person other than a legal grandparent may be denied or a petition may be dismissed on the motion of any party or on the court's own motion if the petition does not state a prima facie case of emotional ties creating a child-parent relationship or ongoing personal relationship or does not allege facts that the intervention is in the best interests of the child.

"(b) A motion for intervention filed by a legal grandparent may be granted upon a finding by clear and convincing evidence that the intervention is in the best interests of the child.

"(5) As used in this section:

"(a) 'Child-parent relationship' means a relationship that exists or did exist, in whole or in part, within the six months preceding the filing of an action under this section, and in which relationship a person having physical custody of a child or residing in the same household as the child supplied, or otherwise made available to the child, food, clothing, shelter and incidental necessaries and provided the child with necessary care, education and discipline, and which relationship continued on a day-to-day basis, through interaction, companionship, interplay and mutuality, that fulfilled the child's psychological needs for a parent as well as the child's physical needs. However, a relationship between a child and a person who is the nonrelated foster parent of the child is not a child-parent relationship under this section unless the relationship continued over a period exceeding 18 months.

"(b) 'Legal grandparent' means the legal parent of the child's legal parent.

"(c) 'Legal parent' means a parent as defined in ORS 419A.004 whose rights have not been terminated under ORS 419B.500 to 419B.524.

"(d) 'Ongoing personal relationship' means a relationship with substantial continuity for at least one year, through interaction, companionship, interplay and mutuality.

"(6) In no event shall costs for the representation of an intervenor under this section be charged against funds appropriated for indigent defense services.

"(7) In a proceeding under this section, the court may assess against any party a reasonable attorney fee and costs for the benefit of any other party."

[2] Although ORS 109.119 sets out the criteria for intervention in juvenile custody proceedings, including proceedings under ORS 419B.100, ORS 419B.115 sets out certain procedural rights that apply to parties who intervene under ORS 109.119 based on a child-parent relationship. The parties do not dispute that intervention itself is covered by ORS 109.119. The rights set out in ORS 419B.115 are simply a legislative recognition of the common-law rule that an intervenor is a party to the action, with all the rights and privileges thereof. The criteria for intervention still must be met, however, and those criteria are found in ORS 109.119.

juvenile court granted the motion. Fuller proceeded to become heavily involved in the dependency proceeding, which had not been fully resolved at the time of the hearing at which the court withdrew Fuller's intervenor status.[3] During that time, Fuller filed a number of motions and petitions with the court, challenging SOSCF and court decisions on the disposition of the child. In June 1995, SOSCF moved to have Fuller dismissed from the case

> "on the grounds that her continued intervention in this case is interfering with [SOSCF's] efforts to support the reunification of the mother and child and is no longer in the child's best interests."

The court denied the motion, stating:

> "As to the State's motion to dismiss intervenor status, the court will deny the motion at this time. Ms. Fuller previously met the criteria for intervention pursuant to ORS 109.119 and has had a significant ongoing relationship with [the child]. Ms. Fuller apparently remains in agreement with [the SOSCF] plan to reunite [the child] with her mother. The issue of whether continued intervenor status is in the best interests of [the child] or whether Ms. Fuller's intervenor status interferes with the agency's planning for this child will perhaps be more appropriately addressed if and when the agency's plan changes to pursuing termination of parental rights and adoption."

SOSCF continued to express concern to the court about Fuller's involvement in the case, in particular its concern that she was interfering with attempts to reunite the child with her mother and that, as part of that interference, she was being less than honest with agency employees and the court. Fuller, in turn, continued to file motions challenging various agency decisions about the child's placement. On March 7, 1996, SOSCF filed a motion for an order limiting Fuller's intervenor status by denying her visitation with the child, again

> "on the grounds that Ms. Fuller's continued intervention in the case is interfering with [SOSCF's] efforts to support the

___

[3] Although there has not been a final judgment as to the disposition of the child, any court decision made pursuant to a dispositional review hearing is a final judgment for purposes of appeal. ORS 419B.476(6); ORS 419A.200(1).

reunification of the mother and child and continues to be contrary to the child's best interests."

The court granted that motion as to visitation, stating that

"Ms. Fuller shall no longer be permitted to attend the mother's visitation with [the child] and no other visitation shall be arranged."

The court did not otherwise limit Fuller's status.

Despite significant efforts by SOSCF, the attempt to reunite the child and her mother failed, and, in March 1997, the trial court entered an order approving SOSCF's plan to pursue termination of parental rights and adoption for the child and to place the child in a therapeutic foster home. The court further stated that,

"[b]ased upon the written information received from [the child's] therapist and [the child's] current plan of moving 4/1/97 into therapeutic foster care, the court does not approve of visitation between [the child] and Ms. Fuller."

Fuller requested a rehearing, which was held in April 1997. At that hearing, the parties addressed two issues: the child's placement in a therapeutic foster home and Fuller's continued status as an intervenor in the case. The mother's attorney asked the court to withdraw Fuller's intervenor status and was joined in that request by the child's attorney. Although SOSCF did not join in the request, it did not oppose it. After hearing the parties' arguments, the court ruled that Fuller's continued participation in the matter was no longer in the best interests of the child. Accordingly, the court granted the motion to withdraw Fuller's intervenor status. In addition, the court affirmed the March 1997 placement order in full.

■ Fuller makes numerous assignments of error. Because it is dispositive, we reach only her claim that the court erred when it withdrew her intervenor status. Fuller contends that, once she was allowed to intervene, the court could not withdraw that status without first conducting a termination proceeding similar to that required for the termination of parental rights. She reasons that ORS 109.119 gives her status as a "psychological parent" and, therefore, that she is entitled to a hearing similar to that required for

the termination of parental rights under ORS 419B.502 to 419B.524 to terminate that status. Fuller misunderstands the import of ORS 109.119. The statute does not grant an intervenor any substantive rights but, rather, only the right to be heard. *State ex rel Juv. Dept. v. Lauffenberger*, 308 Or 159, 163, 777 P2d 954 (1989). Because the statute does not give Fuller the rights of a parent, the procedures required for termination of parental rights are not applicable to the decision to withdraw intervention.

SOSCF concedes that ORS 109.119 does not expressly provide for the withdrawal or termination of intervenor status based on circumstances arising after a petition to intervene has been granted. Nevertheless, SOSCF contends that the court's authority to withdraw or terminate intervenor status is implicit in the statutory language. SOSCF reasons that, because the statutory language implies that the child's best interest is paramount, withdrawal of the grant of intervention is required if there is a showing that the intervention is no longer in the best interests of the child. SOSCF further contends that, because the overriding concern of the juvenile court in a chapter 419B proceeding is to promote the best interest of the child, the court is required to withdraw intervenor status once it has found that further intervention is not in the child's best interest.

Although both parties frame the issue as a single question of whether the court had statutory authority to withdraw Fuller's intervenor status, there are in reality two questions to be answered: First, did the court have the discretion to withdraw an order it had made earlier in the proceeding and, second, did it abuse that discretion when it dismissed Fuller as an intervenor.

■   The answer to the first question is well-settled in Oregon. A court has the inherent power to modify, amend, set aside or vacate any order or judgment it makes, so long as it retains jurisdiction over the underlying action. *Hudelson v. Sanders-Swafford Co.*, 111 Or 600, 606, 227 P 310 (1924). That power extends to orders granting motions to intervene. *Wallace v. Board of County Commissioners*, 105 Or App 364, 369, 804 P2d 1220 (1991).

As to whether the court abused its discretion, it is instructive to look at the statutory criteria for intervention under ORS 109.119. The first criterion is that the party show that there is a child-parent relationship or ongoing personal relationship between that party and the child. Those relationships are defined by the statute. The court did not state, when it granted Fuller's motion, which type of relationship was present. Fuller argues, however, that there was a child-parent relationship, and SOSCF does not dispute that contention, at least insofar as it relates to the time at which the motion to intervene was granted. The facts as stated by both parties support that conclusion. ORS 109.119(5)(a) defines a child-parent relationship as

> "a relationship that exists or did exist, in whole or in part, within the six months preceding the filing of an action under this section, and in which relationship a person having physical custody of a child or residing in the same household as the child supplied, or otherwise made available to the child, food, clothing, shelter and incidental necessaries and provided the child with necessary care, education and discipline, and which relationship continued on a day-to-day basis, through interaction, companionship, interplay and mutuality, that fulfilled the child's psychological needs for a parent as well as the child's physical needs. However, a relationship between a child and a person who is the nonrelated foster parent of the child is not a child-parent relationship under this section unless the relationship continued over a period exceeding 18 months."

The record indicates that, from the time of the child's birth, Fuller provided the type of care and nurturing described in the statute, at the behest of the child's mother and paternal grandparents.

At the April 1997 hearing, the mother's attorney argued that there was no longer a relationship of any kind between Fuller and the child. It is difficult to determine, however, the extent to which the lack of interaction between Fuller and the child was created by the dynamics of the dependency proceedings. It is clear, nevertheless, that Fuller has attempted to maintain the child-parent relationship established earlier. Indeed, it is that attempt that has precipitated the matter before this court. Accordingly, we conclude,

for the purpose of this analysis, that that criterion remains intact.

The second criterion is that intervention must be in the best interest of the child. The parties do not dispute that, at the time the court granted the motion to intervene, the general consensus was that Fuller's participation would be in the child's best interest. However, at the April 1997 hearing, attorneys for the child and the mother contended that, over the course of the proceedings, Fuller's presence had become counterproductive. The trial court found that Fuller's presence was no longer in the child's best interest, and, on *de novo* review, ORS 419A.200(5), we agree. The record indicates that Fuller (1) was less than honest with the agency and the court about the mother's conduct; (2) excused or facilitated the mother's noncompliance with the service agreement requirements; (3) interfered with plans to reunify the child with her mother; (4) engaged in conduct that caused the child emotional harm and demonstrated a lack of understanding and respect for the child's needs; (5) frustrated case planning for the child that included adoptive placement; and (6) abused the juvenile court process.

The question, therefore, is whether an intervention that has been granted under certain circumstances must be maintained, even though those circumstances have changed to the degree that, were intervention to be sought anew, it would not be granted. We conclude that to require the court to maintain the intervention under those circumstances would be detrimental to the judicial process and would subvert the purpose of ORS 109.119. As we have noted, ORS 109.119 grants intervenors a procedural right to be heard by the court—its function is "to make sure the court has free and ready access to all relevant information." Minutes, Senate Judiciary Committee, June 7, 1985, Ex M, at 1, *quoted in Hruby and Hruby*, 304 Or 500, 515, 748 P2d 57 (1987). That right to be heard, in turn, springs from the fact that the intervenor has met certain criteria. If the criteria are not met, the right to be heard does not exist. In this case, Fuller no longer met the criteria and, therefore, no longer had a statutory right to be heard. Once the court had determined that Fuller was no longer supplying useful information and was hampering the court's receipt of useful information, it was well

within the court's discretionary authority to dismiss her from the proceedings. Accordingly, we conclude that the court did not err in withdrawing Fuller's intervenor status.

Affirmed.