Argued at Pendleton May 6; affirmed July 10; rehearing denied
September 4, 1930

## FISHER *v.* FISHER (ALLEN, Intervener)

(289 P. 1062)

*E. R. Ringo* of La Grande (H. E. Dixon of La Grande, on the brief) for appellants.

*R. J. Green* of La Grande (Green & Hess of La Grande, on the brief) for respondents.

BELT, J. Defendants appeal from an order modifying a decree of divorce, with reference to the custody of a minor child. On January 4, 1927, plaintiff ob-

tained a decree of divorce in which a minor child was awarded to the mother, "so long as she properly cares for said child." On December 7, 1929, the trial court, on motion of the plaintiff, modified the decree, awarding the custody of the boy to the father, subject to the right of the mother to "visit said child and to have the child with her over the week-ends, so that such visits will not interfere with his attending school," and providing further that "such custody of the plaintiff of said minor child shall continue so long as plaintiff shall be a resident of Union county, Oregon."

At the time this divorce proceeding was instituted the parties were residing on a farm near Elgin in Union county. On the morning after the decree was rendered, the plaintiff, in accordance with the request of the defendant, took her and the little boy to the home of her sister, Mrs. Lucy Allen, intervenor herein. The little boy, who is now about eleven years of age, has ever since remained continuously in the custody of his aunt. The mother remained at this home for approximately a year and then went to Cove where she had secured employment. On March 19, 1928, she married Vivian Richards, a resident of such place. The record discloses that Mr. Richards is a man of very limited means and earns his livelihood by manual labor. On April 12, 1929, plaintiff also remarried. His wife had just obtained a divorce and the marriage was consummated three days after the expiration of the six months' statutory period. Speaking of divorces, it might also be added that the aunt to whom the boy was taken had also been in the divorce court on two different occasions. Notwithstanding this record of shattered romances, it appears that all parties concerned are held in good esteem by those who know them best, and are, without doubt, good citizens. The

bald fact remains, however, that the boy is the victim. He is not responsible for the situation which has arisen. Neither are the courts.

■■ In such controversies, the guiding star for the court is the welfare of the minor child. The desires of parents who will bring about such a tragedy in the life of a child are of secondary importance. Courts, however, usually award the custody of a child of tender years to the mother, and very properly so, unless she is morally unfit. As against third persons the natural rights of the parents prevail, unless it is clearly shown that the welfare of the child demands that it be taken from them: *Ex parte Barnes,* 54 Or. 548 (104 P. 296, 25 L. R. A (N. S.) 172, 21 Ann. Cas. 465). In the instant case there is nothing which reflects upon the moral character of any person seeking the custody of this child. If it were a controversy between the father and the mother, the court would be inclined to favor the mother. We think that she, however, appreciates the fact that she is not now in a position to properly care for the child and, therefore, desires that its custody be awarded to the aunt. On cross-examination, she testified:

"Q. Now you testified here—you mean today you are satisfied to leave the boy there at Lucy Allen's?

"A. Yes.

"Q. And you claim now you want the child left there with Lucy Allen?

"A. Yes.

"Q. You want her to have the child—is that what you claim?

"A. Yes, I do.

"Q. You are willing that the court should turn the child over to her—is that what you claim?

"A. Yes.

"Q. You are willing to surrender your rights in the child to her, are you?

"A. Yes."

No blame may properly be attributed to the mother because she left her little boy with her sister. She was the victim of circumstances and, no doubt, did the best that she could. We quote the record merely to show that the controversy over the custody of this child is really between the father and the aunt.

We are convinced that Mrs. Lucy Allen has bestowed upon this boy a true mother's love and affection. He has been regular in his attendance at school and gives evidence of having received the best of treatment. She, however, has no legal claim superior to the natural right of the father to his boy. The plaintiff is a sober, honest and industrious man and, without doubt, has also much affection for this child. It appears that his remarriage is a happy one and that his wife is a woman who would have a wholesome influence over any child.

■ Mrs. Allen has now moved to Milton, Oregon, a distance of about one hundred miles from her former home, where she is housekeeper for a widower and his two children. It does not seem just that she should be permitted thus to take this boy away and deprive those who are of his flesh and blood of the opportunity to enjoy him. The changed conditions, as evidenced by the surrender by the mother of her right to the child, and of its removal to Milton under circumstances which may not be best for its interests, warrant the court in modifying the decree. The trial judge is one of wide experience and we believe his judgment on a question of fact should not, without good reason, be reversed. We have only the cold record before us.

The decree of the lower court is affirmed.

McBride, J., absent.