Argued and submitted June 14, reversed in part; otherwise affirmed August 9, 1995, petition for review denied January 30, 1996 (322 Or 598)

## In the Matter of the Marriage of

### Janet Lynn CERDA,
*Respondent,*

*and*

### Frank CERDA,
*Appellant,*

*and*

### James LEMMON
### and Sandra Lemmon,
*Intervenors - Respondents,*

*and*

### Justin Paul CERDA
### and Frank James Cerda,
*Respondents.*

### (15-85-02705; CA A84895)

901 P2d 263

George W. Kelly argued the cause and filed the brief for appellant.

William A. Furtick argued the cause and filed the brief for respondents Justin Paul Cerda and Frank James Cerda.

Patricia A. Vallerand argued the cause for intervenors - respondents. With her on the brief was DePaolis Shepard & Vallerand.

No appearance for respondent Janet Lynn Cerda.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

This is an appeal from an order modifying a judgment of dissolution of marriage. ORS 107.135. Father moved to modify the judgment to change custody of the parties' children from mother to him. The maternal grandparents intervened pursuant to ORS 109.119. The trial court denied father's motion, awarded grandparents custody of the children, and required father to pay grandparents' attorney fees. Father appeals. On *de novo* review, we reverse in part.

We find the facts as follows. Father's and mother's marriage was dissolved in November 1985, and mother was awarded custody of the parties' two children. Approximately six months later, mother suffered a nervous breakdown and placed the children in grandparents' care. The children have remained with them since that time. Mother lives with grandparents off and on, but, in effect, she has turned all of the parenting responsibilities for her children over to grandparents.

Father has visited the children on a regular basis, and up until the time of this motion, had not complained about the placement of children with grandparents. He has never cared for the children for more than a two-week period. Also, he has consistently failed to pay his child support obligation, and that failure has resulted in at least one finding of contempt by the court. In 1992, father married his current wife, Colleen, after he and Colleen won $4.4 million in the state lottery. From that source, father now has annual income of approximately $160,000. Father has a history of alcohol and drug abuse, as well as violent behavior toward mother and Colleen. In June 1993, grandparents asked father to raise his child support payments from $200 per month to $400 per month and to pay $100 per month toward the children's health insurance. Sometime later, grandparents notified father that they wanted him to pay $1,000 per month. Father responded by filing this motion to modify custody.

Father argues that there has been a substantial change of circumstances since the entry of the dissolution judgment, because mother is unable to care for the children. Mother admits that she is not capable of caring for the

children, but argues along with grandparents that physical custody should remain with grandparents. The children, represented by court-appointed counsel, request that they remain with grandparents.

Dr. Jamison, a psychologist, conducted an examination of the children's situation, and interviewed the parties. At trial, she testified:

> "My recommendation is that the children remain in the custody of their grandparents — or remain living with their grandparents — because the boys have been there for about seven years, since they were three and four years old, and they have done very well.

> "It's an extremely stable home. The children have done well in school. These are exceptionally active, excellent parents, grandparents who are serving as parents to the children.

> "This is what they know home to be, and I believe it would be, for a number of reasons, unduly harmful for them to be moved from that setting at this point in time, particularly given their ages — they are just entering middle school; it's a vulnerable time for children — and given what I see as * * * mom's inability to parent them independently at this point in time and what I see as concerns I have about dad as a parent."

After hearing the evidence, the trial court ruled that father's improved financial circumstances and his remarriage did not constitute a substantial change of circumstances sufficient to change custody to father. It also held that compelling circumstances existed to award grandparents custody of the children.

■ Father makes several assignments of error. We begin by addressing his third assignment, that the trial court awarded grandparents custody of the children *sua sponte*. Father argues:

> "In the present case, grandparents' pleadings nowhere asked for custody; on the contrary, they asked that custody remain with mother. The trial court erred in ordering that which grandparents had failed to request."

Although grandparents stated in their motion to intervene that they were requesting that mother retain custody of child, it is clear that at trial, what was litigated was whether father

or grandparents would have custody of the children. ORCP 23 B provides, in part:

> "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; *but failure so to amend does not affect the result of the trial of these issues.*" (Emphasis supplied.)

We conclude that the trial court did not make its ruling *sua sponte*, and that the issue of whether grandparents should be awarded custody was tried by the implied consent of all the parties.

■■ Father also assigns as error the trial court's finding that there was not a substantial change of circumstances sufficient to warrant consideration of a change of custody. In order for the court to grant a change of custody, father must show a substantial change of circumstances since the last award of custody and that the change in custody is in the children's best interests. *Henrickson v. Henrickson*, 225 Or 398, 402, 358 P2d 507 (1961). Here, the fact that mother is no longer able to care for the children is a substantial change of circumstances since the last custody order.

■ Nevertheless, father must also show that the change of custody to him would be in the best interests of the children. As between father and mother, it is clear that the best interests of the children are better served by placement with father. However, because of grandparents' intervention, we must also determine custody as between father and grandparents. ORS 109.119(1)[1] provides us with authority to

---

[1] ORS 109.119(1) provides:

"Any person including but not limited to a related or nonrelated foster parent, stepparent, grandparent or relative by blood or marriage who has established emotional ties creating a child-parent relationship with a child may petition or file a motion for intervention with the court having jurisdiction over the custody, placement, guardianship or wardship of that child, or if no such proceedings are pending, may petition the court for the county in which the minor child resides for an order providing for custody or placement of the child or visitation rights or other generally recognized rights of a parent or person in loco parentis. If the court determines that custody, guardianship, right of visitation,

award custody to grandparents, provided that certain criteria are met. *Lear and Lear*, 124 Or App 524, 527, 863 P2d 482 (1993). In *Hruby and Hruby*, 304 Or 500, 748 P2d 57 (1987), the court explained:

"[T]he courts will deprive natural parents of the custody of their children only in order to protect the children from some compelling threat to their present or future well-being. Apart from these concerns, it is irrelevant to the court's custody determination that the children might have a better home or might have greater financial, educational or social opportunities in the custody of another. Thus, when the court in these cases makes statements such as 'the guiding star for the court is the welfare of the minor child,' *Fisher v. Fisher*, [133 Or 318, 320, 289 P 1062 (1930)], the court means only that the custodial right of a natural parent is not superior to a minimum level of welfare for children, which the courts will protect as *parens patriae*.

"\* \* \* \* \*

"We use 'compelling' to emphasize that in a custody dispute between a natural parent and some other person, a court should not be concerned with attempting to maximize a child's welfare, but with determining whether the child will receive adequate care and love from its natural parent and whether the child will be otherwise unduly harmed, physically or psychologically, by giving custody to the natural parent." *Id.* at 509-11 (some citations omitted).

We find that there are compelling reasons to grant custody to grandparents. As the trial court found, father has had difficulty controlling his anger and has been abusive toward other family members, although none of those episodes involved the children. Father demonstrates a tendency to minimize his problems and, until he won the lottery, his life was aptly characterized as unstable. We are not persuaded that his newly found source of income will necessarily trigger a change in those behavior patterns. Moreover, the children have lived with their grandparents in a stable and emotionally healthy environment for eight years, which is most of their lives. Father has accepted that arrangement and made

---

or other generally recognized right of a parent or person in loco parentis, is appropriate in the case, the court shall grant such custody, guardianship, right of visitation or other right to the person having the child-parent relationship, if to do so is in the best interest of the child. The court may determine temporary custody of the child under this section pending a final order."

no attempt to change custody until pressured to pay an increased amount of child support. Also, father does not contradict Jamison's testimony that the children are at a particularly vulnerable age and that a change in their custody would cause them to regress emotionally, academically and socially. In a case involving a similar issue, we said, "[A] sound stable environment for the children is far more likely to be realized by giving validity to the * * * de facto custody rather than to move the children into a situation which has been demonstrably unstable." *Crane v. Crane*, 17 Or App 637, 640, 523 P2d 596 (1974). Because the evidence is that the children would be unduly harmed by changing their custody to father, we conclude that an award of custody to grandparents under ORS 109.119 is appropriate with reasonable visitation by both father and mother.

Father also assigns error to the trial court's appointment of counsel for the children for purposes of this appeal. He argues that the trial court did not have authority to appoint counsel once the appeal had been filed. ORS 19.033 provides, in part:

"(1)    When the notice of appeal has been served and filed * * *, the Supreme Court or the Court of Appeals shall have jurisdiction of the cause, pursuant to rules of the court, but the trial court shall have such powers in connection with the appeal as are conferred upon it by law and shall retain jurisdiction for the purpose of allowance and taxation of attorney fees, costs and disbursements or expenses * * *."

ORS 107.425(3) provides:

"The court, on its own motion or the motion of either party, may appoint counsel for the children. However, if requested to do so by one or more of the children, the court shall appoint counsel for the child or children. A reasonable fee for an attorney so appointed may be charged against either or both of the parties or as a cost in the proceedings but shall not be charged against funds appropriated for indigent defense services."

■    We conclude that when ORS 19.033 and ORS 107.425(3) are read together, they grant a trial court authority to appoint counsel for the children for purposes of appeal. ORS 19.033 recognizes that the trial courts retain authority to appoint counsel to facilitate appeals when the authority to

appoint counsel otherwise exists. ORS 107.425(3) grants trial courts the authority to appoint counsel for children in ORS 107.135 modification proceedings. An appeal from a judgment arising out of such a proceeding is a continuation of that proceeding and ORS 107.425(3) contains no limitations on when an order appointing counsel can be made. Consequently, the trial court's authority to appoint counsel continued even though the notice of appeal had been filed.

Finally, father assigns as error the trial court's award of attorney fees to grandparents, payable by father. ORS 107.135(7) provides:

> "In a proceeding under subsection (1) of this section, the court may assess against either party a reasonable attorney fee and costs for the benefit of the other party. If a party is found to have acted in bad faith, the court shall order that party to pay a reasonable attorney fee and costs of the defending party."

■ In *Holm and Holm*, 134 Or App 513, 895 P2d 803, *rev allowed* 321 Or 396 (1995), we held that when the grandfather intervened in a proceeding under ORS 107.105 to obtain visitation rights under ORS 109.121 and his request was ultimately denied, there was no authority for the trial court to award attorney fees under ORS 107.105(1)(i) to mother. We reasoned that under that statute, the reference to "party" and "parties" meant the two parties involved in the dissolution proceeding, *i.e.*, the husband and wife. Here, grandparents' request is made pursuant to ORS 107.135(7), which also refers to the assessment of attorney fees "against either party." Our reasoning in *Holm* also controls the interpretation of that statute. The trial court lacked authority to award attorney fees to grandparents.

Award of attorney fees to grandparents reversed; otherwise affirmed.