Willard W. JONES *v.* Mary STRAUSER, et al

79-86                                              585 S.W. 2d 931

Opinion delivered September 10, 1979

*Wilson & Grider*, by: *Murrey L. Grider*, for appellant.

*Dan M. Orr*, for appellees.

JOHN A. FOGLEMAN, Justice. Appellant Willard W. Jones is the father of Marcella A. Jones, a seven-year-old female, born to his former wife, Venita (now Carpenter). He sought

to obtain custody of this daughter by petition for modification of an order of March 23, 1977, awarding custody of the child to her maternal grandparents, Clarence Strauser and Mary Strauser. He alleged that there was a change in circumstances since the original order was entered in that Clarence Strauser had died. Appellant amended his petition on September 29, 1978, making the child's mother a party and alleging that as between the two natural parents, he was the proper person to have custody of the minor daughter. On December 18, 1978, after hearing the evidence, the chancery court denied the modification. On January 18, 1979, a decree was entered continuing Mrs. Strauser's custody.

On appeal, the father asserts that the chancellor committed reversible error. Fundamentally, his argument is that the best interest of the child would be served by awarding him custody. In advancing that argument, he emphasizes the preference of parents over strangers and other relatives in the award of custody of a child, saying that the basis of this preference is the welfare of the child. Since we are unable to say that the chancellor's ultimate finding that it is in the child's best interest that the custody remain unchanged is clearly against the preponderance of the evidence or that the chancellor misapplied the law to the facts, we affirm.

The welfare of the child is the polestar in every child custody case. *Provin* v. *Provin*, 264 Ark. 551, 572 S.W.2d 853. Ordinarily it is true that, as between a parent and a grandparent, the law awards custody to the parent unless he is incompetent or unfit to have custody of the child. *Feight* v. *Feight*, 253 Ark. 950, 490 S.W.2d 140. In this case, the award of the custody of the child to her maternal grandparents was based on an agreement to which appellant was a party. While his parental preference was not thereby forfeited forever, its effect was so diminished that he bore the burden of showing a change in circumstances subsequent to that award which required or justified a change in the custody when considered from the standpoint of the welfare of the child. *Parks* v. *Crowley*, 221 Ark. 340, 253 S.W. 2d 561. See also, *Johnson* v. *Arledge*, 258 Ark. 608, 527 S.W. 2d 917.

The only really significant change in circumstances

shown was the death of the paternal grandfather. The chancellor weighed the evidence very carefully in reaching his conclusion. The following significant findings of fact were incorporated in the court's decree:

> That the defendant, Mary Strauser, along with her late husband, Clarence Strauser, has had the custody of the said Marcella A. Jones from the time she was born until the present and that the said Mary Strauser is now providing adequate care and custody and control of the said Marcella A. Jones.
>
> That circumstances have changed since the entry of the last Order establishing custody in the said Mary Strauser and Clarence Strauser, deceased, on March 23, 1977.
>
> The court feels that the best interest of the child is overriding in this case and the child has been with the grandparent, Mary Strauser, since birth and that the grandmother, Mary Strauser, is doing reasonably well with the child.
>
> The court is not impressed with eight (8) people living in Mary Strauser's home and the fact that they come and go with great frequency.
>
> The Court however finds that both natural parents abandoned the child for the first five (5) years of her life and that only since 1976 has the natural parent, Willard W. Jones, taken any interest in the child, however since that time he has become a fit and proper parent.
>
> It is evident that Mary Strauser, defendant herein, has some physical problems that constitute a health hazard to her, i.e., hypertension and in the event that Mary Strauser should become disabled, the child should be placed with the father.
>
> That it is in the best interest of the said Marcella A. Jones that her custody not be changed at this time. . .

Appellant says that these findings of fact by the chancellor are not particularly in dispute, except as to the chancellor's interpretation of them. He does feel that some of the oral findings of the chancellor at the conclusion of the trial, however, were not warranted. He first complains that in finding that he did not support the child from 1972 to 1976, the chancellor overlooked testimony that he was not allowed to visit with the child from the first Christmas after she was born until 1976, and that the child's mother told him she did not want support and did not want him coming back to see the child. We point out that this testimony related to matters which would have been more appropriately addressed to the order awarding custody to the grandparents. At the same time, it appears to us that appellant could well have taken steps to obtain visitation rights if he had been really interested and had really wanted to contribute to the child's support. It does not appear to us that the ultimate finding that only since 1976 had appellant taken interest in the child was clearly against the preponderance of the evidence.

Appellant also complains of the statements by the court that there would naturally be some difficulties between Marcella and a six-year-old daughter of appellant, on the basis that there is no supporting evidence and that appellant's present wife testified that Marcella's relationship with her two children was good. On the other hand, Mrs. Jones testified that when she had recently visited in the Strauser home, Marcella ran into the bedroom and refused to talk to her, and that in spite of trying to get Marcella to go with her to be in a family portrait, Marcella refused and told Mrs. Jones' daughter that it made no difference what her father or anyone else said, she didn't have to go with Mrs. Jones. The court, however, did not seem to accord major significance to this finding in its decree. In his findings, the chancellor said that this possible friction was the only thing that might be considered derogatory to appellant's home at the time of the hearing, and stated his conclusion thusly: "And, of course, two girls that close would naturally have some difficulties." In reaching this conclusion, the chancellor relied on his own observations and experience of the affairs of life and gave effect to an inference from the facts on the basis of such observation and experience. It is proper for a jury to

do this. *Kroger Grocery & Baking Co.* v. *Woods*, 205 Ark. 131, 167 S.W. 2d 869. In the cited case, we quoted from a textbook statement pointing out· that jurors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life anymore than the court is expected to ignore its own "knowledge and experience with ordinary affairs." In the current edition of that text, we find this statement repeated. See 29 Am.Jur. 2d 59, Evidence, §21. It has been specifically held in at least one other jurisdiction that the principles with reference to a jury's consideration of its own general knowledge and experience in the affairs of life are no less applicable to a judge, as trier of facts, than to a jury. *Hinterman* v. *Stine*, 55 Mich. App. 282, 222 N.W.2d 213 (1974). See also, *Drumwright* v. *Walker*, 167 Va. 307, 189 S.E. 310 (1937).

Observance of this principle is certainly proper. It would be extremely difficult, if not impossible for a fact finder, even a judge, to avoid drawing inferences based on his knowledge and experience in everyday affairs of life. A chancellor dealing in matters pertaining to child custody would find it difficult indeed to disregard any knowledge he had gained through his experience and observation in those cases. It seems inevitable that he would apply this knowledge consciously or subconsciously. As a result, we cannot say that the chancellor's statement was an unwarranted inference.

Virtually the same thing may be said with reference to the chancellor's statement that to tear the child from the only home she had known would be a difficult and traumatic psychological event to the child. In the absence of evidence to the contrary, it might be said that the chancellor merely stated a matter of common knowledge. Appellant suggests that the child might better adjust at this time than later. This fact is less certain. ·

It is true that the chancellor considered the facts that the grandmother is 65 years of age and has a hypertension problem, and that eight people live in her home and that children and grandchildren come and go with frequency in weighing all the factors, but he did not consider them to override other factors in determining the best interests of the

child. We are in no position to disagree. There is no case in which the ability and opportunity of the chancellor to observe the parties carries greater weight. *Wilson v. Wilson*, 228 Ark. 789, 310 S.W.2d 500; *Lumpkin v. Gregory*, 262 Ark. 561, 559 S.W.2d 151.

Not only is it significant that the chancellor observed Mrs. Strauser, but it is also significant that although he specifically held that custody should not be changed at this time, he stated that in the event that Mary Strauser should become disabled, the child should be placed with her father. No one contests the holding that, as between appellant and the child's mother, appellant would be the proper person to have custody of Marcella. We consider the portion of the court's decree recognizing that deterioration of Mrs. Strauser's health may dictate a change in the custody of the child as a retention by the court of control of the case for that purpose. It is appropriate that such control be retained in a case such as this. See *Phifer v. Phifer*, 198 Ark. 567, 129 S.W.2d 939.

The decree is affirmed.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and HICKMAN, JJ.