Glen David HICKEY *v.* Mary Lea HICKEY

CA 82-484                                   658 S.W.2d 411

Court of Appeals of Arkansas
Division II
Opinion delivered October 12, 1983

*Howard & Howard,* by: *William B. Howard,* for appellant.

No brief for appellee.

Tom Glaze, Judge. This is a divorce case in which the appellant-father appeals the chancellor's temporary award of custody to the appellee-mother. Appellant contends the chancellor's order is clearly against the preponderance of the evidence and the best interests of the parties' two-and-a-half-year-old daughter. On appeal, he requests temporary legal custody of the parties' daughter but that actual custody be awarded his father and stepmother. At the time of the proceedings below, the grandparents were not parties to this action.

At trial, both parents' conduct and life styles were shown to be less than one might hope would exist, knowing that a young child's welfare and best interests are at stake. First, concerning the appellee, the evidence reflects the following:

(1) She is twenty-one years old and has been married to appellant approximately two years.

(2) Taking the child with her, she separated from appellant, who is in the armed forces and stationed in Kentucky.

(3) She admitted adulterous relations with a known felon, living with him in Jonesboro and in Texas.

(4) During a fifteen-month period, she resided in at least five different residences.

(5) The felon, Terry Pittman, with whom she lived, admitted the purchase and regular use of drugs. His probation officer testified that Pittman violated parole, listing five charges, one of which included theft by receiving charges.

(6) She has another felon friend, Marvin Collins, who is presently in the penitentiary. Witnesses stated she has made frequent visits to the penitentiary and has announced intentions to marry Collins.

(7) Witnesses observed her smoking marijuana in front of her child. They have also seen her carrying a gun given to her by Pittman.

(8) One witness stated appellee admitted that she and Pittman stole some plants.

(9) The babysitter testified that on many occasions the child was unclean when she was brought by appellee.

Next, we consider the evidence bearing on appellant's request for custody:

(1) He is twenty-four years old and has not been steadily employed until his entry into the armed forces. His planned discharge date was in June, 1983.

(2) After appellee left him in Kentucky, he cohabited for about one month with appellee's seventeen-year-old aunt.

(3) He admitted smoking "pot" and, although he said that he had quit, he, in later testimony, admitted a recent smoking instance described by another witness.

(4) Witnesses testified he did not want the child but wanted his father and stepmother to have his daughter.

Although not parties to this action, the paternal grandparents, Bobbie and Robert Hickey, testified concerning their love for and interest in the parties' child. Suffice it to

say, the evidence clearly shows that the grandparents are responsible people who are capable of rearing their granddaughter if they so choose. In fact, after hearing all of the evidence, the chancellor stated the following:

> Let me start by saying that if this were anything other than a temporary hearing, a hearing on the merits, my decision might well be different. First of all there is no doubt in my mind that the grandparents of this child love and want to protect the child, and certainly from the testimony I have heard they are capable of doing that and I have no question about their fitness, but the law has a preference of a natural parent and I think rightly so. . . .

The chancellor continued by stating he had reservations about the fitness of either the appellant or the appellee. But he concluded that — on a temporary basis only — he would award custody of the child to appellee. In doing so, the chancellor enjoined appellee from removing the child from the State. He also ordered her to refrain from having the child in the company of Pittman and other males.

In arguing the chancellor erred, appellant primarily contends that his father and stepmother should have actual custody of their granddaughter while he should be awarded legal custody. Such an arrangement was decreed and affirmed in *Tidwell* v. *Tidwell*, 224 Ark. 819, 276 S.W.2d 697 (1955); but there the grandparents were parties to the action and had had actual custody of their grandchild for eight years. In the instant case, the grandparents are not parties, as yet, and they had their granddaughter for only six weeks before this action was commenced. Too, another factor affecting the chancellor's decision may have been testimony evidencing that the grandparents' expressed interest was to care for the child only until appellant got out of the service; yet, other evidence indicated appellant had no real interest in keeping his daughter.

The chancellor referred to the well-known rule that, between a parent and a grandparent, the law awards custody to the parent unless he is incompetent or unfit to have custody of the child. *Jones* v. *Strauser*, 266 Ark. 441, 585

S.W.2d 931 (1979). Despite that rule, the welfare of the child is the polestar in every child custody case, and we accordingly have upheld the chancellor's award to a grandparent when it was in the child's best interest. *See Vance* v. *Butler*, 270 Ark. 770, 606 S.W.2d 153 (Ark. App. 1980); *Rains* v. *Alston*, 265 Ark. 108, 576 S.W.2d 505 (1979); and *Jones* v. *Strauser, supra.*

Here, on the evidence presented, we are uncertain whether the grandparents are actually seeking custody of their granddaughter or only wish to serve as temporary actual custodians until appellant is out of military service. If the latter is true, and since appellant's estimated military discharge date has passed, the grandparents' interests in seeking actual custody at this time may have ended. Because this cause comes to us from a temporary order, we need not speculate on this important fact. When this case is heard on its merits, the chancellor can again review the parties' existing situations and interests. Given the delay since the court's award of temporary relief, the grandparents may well have decided the extent of their interests concerning the custody issue and whether they choose to intervene as parties seeking custody of their granddaughter.

As the chancellor stated at the hearing, his decision might have been different if the matter had been anything but a request for temporary relief. If this were a review of a final order, our decision might be different as well. But under these circumstances, we affirm the chancellor's decision with the view that this cause will be further investigated and developed at trial. *See Higgins* v. *Merritt*, 269 Ark. 79, 598 S.W.2d 418 (1980).

In conclusion, we fully recognize the grave nature of the allegations of unfitness made in this case, and as we have suggested before, the chancellor may choose to appoint a guardian *ad litem* to represent the minor child's interests in the future custody proceedings. We more fully detailed the role of such an *ad litem* in *Kimmons* v. *Kimmons*, 1 Ark. App. 63, 613 S.W.2d 110 (1981).

Affirmed.

CRACRAFT and CLONINGER, JJ., agree.