Argued and submitted February 12, affirmed November 17, 1993

Elmer G. LEAR
and Dorothy Lear,
*Respondents,*

*v.*

Lorie A. LEAR,
*Appellant,*

Ronald LEAR,
*Respondent,*

*and*

CHILDREN'S SERVICES DIVISION
OF THE STATE OF OREGON,
*Respondent below.*

(88-2046; CA A75480)

863 P2d 482

Jeffrey L. Pugh argued the cause and filed the brief for appellant.

Steven T. Campbell argued the cause for respondents Elmer G. Lear and Dorothy Lear. With him on the brief was Campbell, Moberg & Canessa, P.C.

No appearance for respondent Ronald Lear.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

DEITS, P. J.

## DEITS, P. J.

In this proceeding, mother seeks to modify a court order awarding custody of her child to child's paternal grandparents (grandparents). She requests that custody of child be awarded to her. We affirm.

Child was born in May, 1986. In 1986, CSD became involved with the family because mother had hit child. CSD began to work with both parents. In 1987, another incident occurred in which mother left child alone. Child was then made a ward of the juvenile court and was placed with her paternal grandparents. According to the testimony of father, who is no longer married to mother, CSD attempted to assist them with their parenting skills, but without much success. In 1988, grandparents brought a proceeding under ORS 109.119, seeking permanent custody of child. In June, 1988, the trial court awarded permanent custody of child to grandparents. Mother and father[1] were given "reasonable and seasonable visitation rights under the supervision and the presence of the [grandparents]." In 1989, mother sought additional unsupervised visitation. She was awarded additional visitation subject to supervision by either her mother or grandparents. However, the court's order provided that not all visitation had to be in the presence of the supervising party. Child has lived with grandparents continuously since they were given custody. She was almost six years old at the time of the hearing on this matter in May, 1992.

■ The threshold issue here is what is the applicable standard for us to apply in making this decision. Because this case involves custody by persons who are not child's natural parents, the initial award of custody was made under ORS 109.119. That statute allows a person "who has established emotional ties creating a child-parent relationship with a child" to bring proceedings to obtain custody. ORS 109.119 directs the court to grant custody to persons meeting the requirements of the statute if "to do so is in the best interest of the child." However, despite that language, it has been held that, if the custody dispute is between a person coming within the statute and a natural parent, the natural parent must be

---

[1] Father does not seek custody of child, but supports grandparents' request for custody.

awarded custody unless there are compelling reasons for giving custody to another party. *Hruby and Hruby*, 304 Or 500, 502, 748 P2d 57 (1987); *see also State ex rel Juv. Dept. v. Lauffenberger*, 308 Or 159, 777 P2d 954 (1989). That standard was applied in the earlier proceeding awarding permanent custody to grandparents.

The question presented here is what standard applies after a third party has been awarded custody under ORS 109.119, and a natural parent seeks to modify that award. The issue is whether the party who has been awarded custody again has the burden of proving that there are compelling reasons not to award custody to the natural parent or whether the moving party, the natural parent, must first prove that there are changed circumstances since the earlier determination that there were compelling reasons not to award custody to the parent.

■ The pertinent statute does not directly address this question. ORS 109.119 establishes procedures for the initial consideration of custody by a third party. However, it does not provide a process or standards when modification of custody granted under ORS 109.119 is sought. We conclude that, once permanent custody is given to a third party in a proceeding brought under that statute, the party seeking to modify custody must show that a substantial change of circumstances has occurred since the time that the court determined that there were compelling reasons not to award custody to the natural parent. To allow the natural parent to relitigate custody without a change of circumstances could subject child, the child's custodian and the courts to endless relitigation of the same issue. Such a result would be inconsistent with an award of permanent custody and would not appear to be in anyone's best interest. Our conclusion does not preclude a natural parent from ever regaining custody of a child. If the parent shows that circumstances have substantially changed, then the question for the court is again whether there are compelling reasons not to award custody to the natural parent.

■ Here, the reasons for the trial court's decision in 1988 not to award custody of child to mother were mother's lack of adequate parenting skills, particularly her poor intellectual skills, her inability to control her anger and the

resulting physical abuse of child. Child's father, who was married to mother during the time before child was placed with grandparents, testified that mother had difficulty caring for child and stated that she had frequently hit both child and him. Mother admitted that she had hit child during that time. The psychologist's report presented to the court in 1988 concluded:

"It is my opinion that [child] would be at risk if she were returned to her mother's care in an unsupervised fashion. [Mother] has a great deal of difficulty handling stress and frustration and she has a limited knowledge of her daughter's needs. It does not appear that [mother] has a close relationship to [child] and it is possible that good bonding has not occurred between mother and daughter. Fortunately, [father] appears to have a close relationship to the child and this may help offset the lack of relationship the child has with her mother. It appears that neither of these parents is adequately equipped to deal with their child on a daily basis. They have difficulty meeting her needs and certainly could benefit from parent training. I would recommend that both of them complete a parent training program prior to returning [child] to the home. It will also be important for [mother] to continue working on her anger management and for the two of them to work together on improving their relationship. The intellectual limitations that [mother] has will tend to interfere with her ability to learn, both in parenting and in counseling. It may be necessary for someone to work individually with [mother] in addition to working with the two of them in a group situation for parent training. At this point, [mother] appears to be motivated to make some changes and I consider this to be a very positive sign in being able to work with her. It will be difficult to work with [mother] on a cognitive approach to controlling her anger, which is usually the most effective way to do so. The therapeutic approach needs to be broken down into small repetitive steps with much opportunity for practice. As long as she is motivated to change, there is a fairly good chance she can reduce her anger and rage."

As discussed above, we should first determine whether circumstances supporting the court's earlier determination that there were compelling reasons not to award custody to mother have changed. The changes on which mother relies to support the conclusion that circumstances have changed substantially are that she is more mature, she

has more information on parenting and that she has learned to control her anger. She also relies on the fact that she is now living with her parents, which would provide a stable environment for child.

Whether mother has, in fact, substantially changed in a way that would now allow her to be an adequate parent is the critical inquiry for us. There is evidence that goes both ways on this question. Mother testified that she has learned to control her anger, that she has educated herself on parenting skills, that she has improved her relationship with child and has succeeded in maintaining steady employment. In addition, Dr. Birney, a psychologist who evaluated her approximately a year before this hearing, testified that he believed that she could be an adequate parent. On the other hand, there was evidence that mother's problems with anger have continued. Further, she had not pursued any counseling or parent training for a year and a half before this hearing. There is also some indication that mother's overall stabilization of her life and improved relationship with child may depend, at least in part, on her continuing to live with her parents. There was evidence that mother never initiated a telephone call to her daughter; that her mother did so. Further, her mother appeared to provide a significant part of the child care when child was staying there. In addition, the persuasiveness of Birney's opinion is lessened somewhat because his opinion was apparently based on his understanding that mother's abuse of child was an isolated incident. He also appeared to base his opinion on the assumption that mother would continue to live with her parents. Finally, he did conclude that mother's basic personality structure and general intellectual functioning has not changed, and likely will not change in the future, and that she does have a problem managing her anger.

■ Although mother may have made some progress in dealing with her deficiencies as a parent, we conclude that mother's abilities as a parent have not changed significantly. Further, even if it could be said that mother has changed sufficiently to justify reconsidering the custody issue, we conclude, as did the trial court, that compelling reasons continue to exist not to award custody of child to mother. Further, we believe that an additional compelling reason not

to award custody to mother now exists. Child has now lived with grandparents for almost all of her life, six years. The evidence shows that she is well adjusted in her home and community and has developed strong bonds with grandparents. Although those facts alone may not provide compelling reasons not to award custody to mother, we believe that they are a relevant factor to consider in circumstances such as these.

Affirmed. No costs to either party.