[794 NYS2d 516]

In the Matter of MICHAEL A. GUINTA et al., Appellants, v BRIDGET S. DOXTATOR et al., Respondents.

Fourth Department, April 29, 2005

### APPEARANCES OF COUNSEL

*J. Scott Porter,* Syracuse, for appellants.

*Frank H. Hiscock Legal Aid Society,* Syracuse (*Robert P. Rickert* of counsel), for respondents.

*Daniel F. Mathews, III, Law Guardian,* Syracuse, for infant.

### OPINION OF THE COURT

PINE, J.

This appeal requires us to determine whether, in a custody dispute between parents and nonparents, a court that has previously found extraordinary circumstances and awarded joint custody to the parties may, upon petitions from both parties seeking sole custody based on a change of circumstances and the best interests of the child, revisit the issue of extraordinary circumstances, find that they no longer exist, and award custody of the child to the parents as a matter of right without consideration of the child's best interests. No reported New York case has addressed that issue. For the reasons that follow, we hold that, under such circumstances, the court may not revisit the issue of extraordinary circumstances.

I

Petitioners, the paternal aunt and uncle of now six-year-old Dayona D., appeal from an order that "denied and dismissed" their petition seeking to modify a prior order of custody and granted respondents' cross petition seeking to modify that prior order. Family Court had previously awarded custody of Dayona jointly to petitioners and respondents, the birth parents, with primary physical residence to petitioners and liberal visitation to respondents. The court issued that prior order based on a finding that extraordinary circumstances existed and that such arrangement was in the best interests of Dayona (*see generally Matter of Bennett v Jeffreys,* 40 NY2d 543 [1976]). Thereafter petitioners and respondents both sought to modify that order and obtain sole custody, alleging only that there had been a change of circumstances. The court, sua sponte, determined that extraordinary circumstances no longer existed and awarded sole custody to respondents. That part of the order directing

transfer of sole custody to respondents on September 1, 2004 was stayed by order of this Court.*

On this appeal, petitioners contend that the court erred in applying the extraordinary circumstances test in a modification proceeding and that it is in Dayona's best interests for petitioners to have sole custody. Respondents contend that the court had discretion to apply the extraordinary circumstances test and that we should not undertake a best interests analysis. For the reasons that follow, we conclude that the court erred in applying the extraordinary circumstances test a second time in a modification proceeding and that the proper standard is whether either petitioners or respondents established "a change [of] circumstances which reflects a real need for change to ensure the best interest[s] of the child" (*Matter of Irwin v Neyland,* 213 AD2d 773, 773 [1995]).

## II

Dayona was born on January 16, 1999 and, shortly thereafter, respondents asked Dayona's paternal grandmother to care for the child while respondent Bridget S. Doxtator served a jail sentence. Indeed, both respondents have a lengthy history of substance abuse and criminal behavior. By stipulated order, the grandmother and respondents were awarded joint custody of Dayona. Subsequently, the grandmother was awarded sole custody by a default order, but petitioners took over the care of the child. In December 2000, respondents petitioned and petitioners cross-petitioned for custody of Dayona. Family Court found that extraordinary circumstances existed, noting that respondents had, at one point, gone one year without any contact with Dayona, thereby abdicating all parental responsibilities to petitioners. The court further found that the "pattern of neglect and abandonment" of respondents was "obviously attributable to their persistent criminal behavior and their underlying problems with drugs and alcohol." Despite respondents' then 10-month period of sobriety and lawful behavior, the court concluded that such a praiseworthy achievement had to be balanced with respondents' "almost 20 year history of drug and alcohol abuse and severe criminal problems." The court granted respondents liberal visitation, including alternate weekends. That order was affirmed by this Court on December 30, 2002 (*Matter of Doxtator v Darling,* 300 AD2d 1075 [2002]).

* Other portions of the order, providing for increasing overnight visitation by Dayona with respondents, counseling for Dayona, and joint counseling for the four adults, were not stayed.

In April 2003, petitioners filed a petition seeking sole custody of Dayona and suspension of future visitation between respondents and the child based on an alleged change of circumstances. Petitioners alleged an inability to communicate with respondents; a lack of cooperation from respondents; a failure by respondents to focus on Dayona's needs; a failure by respondents to become actively involved in Dayona's development; and a failure by respondents to provide a suitable and stable home environment. Specifically, petitioners expressed concern over conditions in respondents' home that included the violent behavior of another child living in the home.

Respondents cross-petitioned for sole custody, alleging that there had been a significant change of circumstances in that petitioners failed to acknowledge respondents' rights, thwarted respondents' efforts and had attempted to change Dayona's name. Respondents further alleged that they were able to provide a stable home and that it would be in the best interests of Dayona to be with her parents and siblings.

Following six days of testimony, the court determined that, because extraordinary circumstances no longer existed, Dayona must be returned to respondents, her birth parents. The court did not determine whether there had been a change of circumstances nor did it consider the child's best interests, the standard both petitioners and respondents had attempted to satisfy.

## III

On appeal, petitioners contend that the court is precluded from revisiting the issue of extraordinary circumstances where, as here, there has been a prior judicial determination that such circumstances existed. Petitioners rely on language in *Matter of Gary G. v Roslyn P.* (248 AD2d 980 [1998]). In that case we wrote that a parent has a superior right to custody and thus a nonparent seeking custody has a burden of proving that extraordinary circumstances exist. We noted that "[t]he foregoing rule applies even if there is an existing order of custody concerning that child unless there is a prior determination that extraordinary circumstances exist" (*id.* at 981; *see Matter of Michael G.B. v Angela L.B.*, 219 AD2d 289, 292 [1996]). That case, however, did not involve a reassessment of extraordinary circumstances. Rather, we held that, in the absence of a prior determination of extraordinary circumstances, "the record [was] adequate to enable us to apply the 'extraordinary circumstances' test, and we reach[ed] that issue in the interest of judicial

economy" (*Gary G.*, 248 AD2d at 981). In *Matter of Ash v Jones* (281 AD2d 930, 930 [2001]), we noted that the court had previously determined that extraordinary circumstances exist and held that "a change in custody is warranted only if it is in the best interests of the child." While that case may imply that reassessment of extraordinary circumstances is not required, it does not address whether a court is precluded from engaging in such a reassessment.

Here, as previously noted, we are called upon to determine whether a court in a proceeding to modify a prior custody order may revisit the issue of extraordinary circumstances where there has been a prior judicial determination that extraordinary circumstances exist, thereby possibly restoring the birth parents to their preferred status, or whether, after a court has made a judicial determination that extraordinary circumstances warranted an award of custody to a nonparent, the test is whether there has been a change of circumstances requiring a change of custody to ensure the best interests of the child. We conclude that, once the preferred status of the birth parent under *Bennett* (40 NY2d 543 [1976]) has been lost by a judicial determination of extraordinary circumstances, the appropriate standard in addressing the possible modification of the prior order is whether there has been a change of circumstances requiring a modification of custody to ensure the best interests of the child.

## IV

Like most states, New York recognizes " 'that a parent has a right to rear his [or her] child superior to that of a nonparent' " (*Matter of Cote v Brown*, 299 AD2d 876, 877 [2002], quoting *People ex rel. Anderson v Mott*, 199 AD2d 961, 961 [1993]; *see Bennett*, 40 NY2d at 546-548; *Gary G.*, 248 AD2d at 981). That "parental preference" is one of two "foundational policies in child custody law" (*C.R.B. v C.C.*, 959 P2d 375, 379 [Alaska 1998]; *see* Taylor, *C.R.B. v. C.C. and B.C.: Protecting Children's Need for Stability in Custody Modification Disputes Between Biological Parents and Third Parties*, 32 Akron L Rev 371, 372 [1999]), and it is applied to avoid "totalitarian social engineering" that could occur if nonparents could seek an initial award of custody merely by showing that they could better care for a child (*C.R.B.*, 959 P2d at 380). The other foundational policy is the child's need for stability (*see id.* at 379; Taylor, 32 Akron L Rev at 372).

Policies differ among the states with respect to criteria for modifying custody orders. Numerous states adhere to the

principle that the parental preference no longer applies where there has been a prior judicial determination applying the parental preference and nevertheless awarding custody to a nonparent (*see Ex parte McLendon*, 455 So 2d 863, 865 [Ala 1984]; *C.R.B.*, 959 P2d at 380-381; *Jones v Strauser*, 266 Ark 441, 443, 585 SW2d 931, 932 [1979]; *Willis v Duck*, 733 So 2d 707, 713 [La 1999]; *Barnett v Oathout*, 883 So 2d 563, 567-568 [Miss 2004]; *Searcy v Seedorff*, 8 SW3d 113, 117 [Mo 1999]; *Bivens v Cottle*, 120 NC App 467, 469, 462 SE2d 829, 831 [1995], *appeal dismissed* 346 NC 270, 485 SE2d 296 [1997]; *In re Whiting*, 70 Ohio App 3d 183, 186-187, 590 NE2d 859, 861-862 [1990]; *Johnson v Johnson*, 681 P2d 78, 80-81 [Okla 1984]; *Lear v Lear*, 124 Or App 524, 527, 863 P2d 482, 484 [1993]; *Blair v Badenhope*, 77 SW3d 137, 148 [Tenn 2002]; *In Interest of Ferguson*, 927 SW2d 766, 768-769 [Tex 1996]; *Dyer v Howell*, 212 Va 453, 455-456, 184 SE2d 789, 791-792 [1971]).

Other states apply the parental preference in all custody proceedings, whether they are initial proceedings or proceedings to modify prior orders (*see e.g. Perez v Perez*, 212 Conn 63, 77-79, 561 A2d 907, 915 [1989]; *Ward v Ward*, 874 So 2d 634, 636-638 [Fla 2004]; *In re Custody of Walters*, 174 Ill App 3d 949, 952, 529 NE2d 308, 310-311 [1988]; *Hunt v Whalen*, 565 NE2d 1109, 1110-1111 [Ind 1991]; *Matter of Guardianship of Williams*, 254 Kan 814, 828, 869 P2d 661, 670 [1994]; *Heltzel v Heltzel*, 248 Mich App 1, 23-24, 638 NW2d 123, 136 [2001], *lv denied* 465 Mich 942, 639 NW2d 256 [2001]).

Finally, a small minority of states applies a best interests test in all circumstances, including custody cases between parents and nonparents and regardless of whether an initial determination or a modification of custody is sought (*see e.g. Matter of Custody of C.C.R.S.*, 892 P2d 246, 256-258 [Colo 1995], *cert denied* 516 US 837 [1995]; *Ross v Hoffman*, 280 Md 172, 178-179, 372 A2d 582, 587 [1977]).

In states that use the parental preference for initial determinations, but use a change of circumstances/best interests test for modification of a prior order, there are two lines of cases concerning the effect a prior voluntary surrender or consent order has on the parental preference. One line of cases holds that the parental preference will not apply even if custody was obtained by a nonparent by a consent order or voluntary placement (*see e.g. S.B.L. v E.S.*, 865 So 2d 1214, 1219 [Ala 2003]; *Jones*, 266 Ark at 443, 585 SW2d at 932; *Barnett*, 883 So 2d at 567-568; *Price v Howard*, 346 NC 68, 79-82, 484 SE2d 528, 535-

536 [1997]; *Blair*, 77 SW3d at 146-148). The other line of cases, however, holds that the parental preference applies in cases where the parent voluntarily relinquished custody (*see e.g. Matter of Burney*, 259 NW2d 322, 324 [Iowa 1977]; *Willis*, 733 So 2d at 713; *Custody of a Minor*, 389 Mass 755, 768, 452 NE2d 483, 491 [1983]).

The theory in continuing the parental preference after a voluntary placement is that courts should encourage parents to seek help if and when necessary (*see In re Guardianship of L.L.*, 745 NE2d 222, 233 [Ind 2001]). In *Barnett v Oathout*, the Supreme Court of Mississippi addressed this issue and wrote:

> " 'Because stability in the lives of children is of such great importance, we have carefully weighed the impact of establishing an exception, or a new standard, for such instances. While we do not want to discourage the voluntary relinquishment of custody in dire circumstances where a parent, for whatever reason, is truly unable to provide the care and stability a child needs, neither do we want to encourage an irresponsible parent to relinquish their child's custody to another for convenience sake, and then be able to come back into the child's life years later and simply claim the natural parents' presumption as it stands today' " (883 So 2d at 568, quoting *Grant v Martin*, 757 So 2d 264, 266 [Miss 2000]).

In New York, the parental preference applies where there has been a voluntary placement of the child or an order entered upon the consent of the parties (*see Matter of Lewis v Johnson*, 302 AD2d 756, 757 [2003]; *Cote*, 299 AD2d at 877). Indeed, we wrote in *Gary G.* (248 AD2d at 981) that the extraordinary circumstances rule applies "even if there is an existing order of custody concerning [the] child unless there is a prior determination that extraordinary circumstances exist."

In cases such as this, where there was a litigated custody dispute and a prior determination that extraordinary circumstances exist, the two foundational policies in custody litigation collide (*see C.R.B.*, 959 P2d at 379). In *C.R.B.*, the Supreme Court of Alaska found that the child's needs trump the parental preference where the issue is whether a prior order that granted the nonparent custody after a litigated custody dispute should be modified. The court wrote that the application of the parental preference involves "an inevitable sacrifice of children's interests in cases where a nonparent can better serve those

interests, but a parent's custody is not 'clearly detrimental' "
(*id.* at 380); however,

> "[o]nce a court has properly transferred custody
> from a parent to a nonparent, it does no good to ap-
> ply the [parental preference] doctrine to weaken the
> substantial change requirement for modification.
> The proceeding that gave the nonparent custody
> will have enabled the parent to exercise the parental
> preference, and achieved the goal that leads us to
> treat parent-nonparent cases differently from other
> custody cases. Having once protected the parent's
> right to custody, at the risk of sacrificing the child's
> best interests, we should not then sacrifice the
> child's need for stability in its care and living ar-
> rangements by modifying those arrangements more
> readily than in a parent-parent case" (*id.*; *see Blair*,
> 77 SW3d at 145).

We find the reasoning in cases such as *C.R.B.*, *Ferguson*, *Blair*
and *Willis* to be persuasive. The parental preference applies in
New York until extraordinary circumstances are found, but we
conclude that in subsequent proceedings seeking modification of
a prior custody order it is appropriate that the best interests of
the child come first. Stability is a crucial factor in child develop-
ment that should not be ignored (*see generally* Annotation, *Con-
tinuity of Residence as Factor in Contest Between Parent and
Nonparent for Custody of Child Who Has Been Residing With
Nonparent—Modern Status*, 15 ALR5th 692).

Thus, we conclude that traditional principles concerning the
modification of prior custody orders should apply where, as
here, there has been a prior judicial determination of extraordi-
nary circumstances. This Court previously has written that
" '[a] party seeking a change of custody bears a heavy burden of
proof that the change contemplated is in the child's best
interests' " (*Matter of Ammann v Ammann*, 209 AD2d 1032,
1033 [1994], quoting *Collins v Collins*, 115 AD2d 979, 979
[1985]). Indeed, "[i]t is well established that alteration of an
established custody arrangement will be ordered only upon a
showing of a change [of] circumstances which reflects a real
need for change to ensure the best interest[s] of the child" (*Ir-
win*, 213 AD2d at 773; *see Pudlewski v Pudlewski*, 309 AD2d
1296, 1297 [2003]; *Matter of Daniels v Daniels*, 309 AD2d 1174,
1175 [2003]; *see generally Friederwitzer v Friederwitzer*, 55
NY2d 89, 95 [1982]). Where, as here, the existing custody ar-

rangement was established by a court order entered following a plenary trial, that arrangement is entitled to greater weight than a disposition entered following a stipulation between the parties (*cf. Matter of Carl J.B. v Dorothy T.*, 186 AD2d 736, 737 [1992]). As *Bennett* makes clear, "a determination that extraordinary circumstances exist is only the beginning, not the end, of judicial inquiry. Extraordinary circumstances alone do not justify depriving a natural parent of the custody of a child. Instead, once extraordinary circumstances are found, the court must then make the disposition that is in the best interest of the child" (*Bennett*, 40 NY2d at 548).

## V

The last testimony in this matter was taken well over a year ago, and the parts of the order on appeal requiring counseling for the parties and Dayona and increasing visitation with respondents were not stayed. At the time the testimony ended, the other child in respondents' home whose behavior was of concern to petitioners was awaiting placement for treatment in an institution. Because of the possibility of significant changes of circumstances since the hearing, we decline to apply the appropriate standard ourselves based on the record before us.

Accordingly, we conclude that the order should be reversed, the petition reinstated and the matter remitted to Family Court to determine following a further hearing, if necessary, whether a change of circumstances warrants modification of custody in the best interests of Dayona.

GREEN, J.P., SCUDDER, GORSKI and MARTOCHE, JJ., concur.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously reversed, on the law, without costs, the petition is reinstated and the matter is remitted to Family Court, Onondaga County, for further proceedings in accordance with the opinion by PINE, J.