200 P.3d 1106 (2008)
In re the Parental Responsibilities of M.J.K., R.A.K., M.K.D., and Z.D.D., Children,
Upon the Petition of Cheryl Goff, Petitioner-Appellee, and
Concerning Jennifer Vawter, Appellant.
No. 07CA2109.
Colorado Court of Appeals, Div. V.
November 13, 2008.
*1107 No Appearance for Petitioner-Appellee.
Jennifer Vawter, Pro Se.
Opinion by Judge GABRIEL.
In this consolidated proceeding for termination of the guardianships of her older children, M.J.K. and R.A.K., and for modification of the parental responsibilities of her younger children, M.K.D. and Z.D.D., Jennifer Vawter (mother) appeals from the trial court's order continuing the guardianships and maintaining the sole decision-making responsibility and primary residential care previously granted to her mother, Cheryl Goff (grandmother). The central question before us is whether the trial court erred in applying the statutory standards generally governing petitions to terminate guardianships and motions to modify allocations of parental responsibility to a biological parent who sought such relief after having agreed to the guardianships and allocations at issue. Mother principally claims that application of these standards to her in the context of this case violates her fundamental rights to custody, care, and management of her children. We disagree and therefore affirm.

*1108 I. Background
The record before us, albeit incomplete, reflects that grandmother originally assumed the care and custody of the children with mother's consent. Pursuant to uncontested orders, grandmother received guardianship of M.J.K. and R.A.K. and decision-making responsibility and primary residential care of M.K.D. and Z.D.D. These orders do not reflect that the guardianships, parental responsibilities, or residential care were to be temporary. Moreover, it is undisputed that the children have been in grandmother's care since 2003 and that mother has exercised parenting time with varying frequency subject to grandmother's supervision.
In December 2005, mother filed a motion for modification requesting that primary residential care and sole decision-making responsibility be returned to her. As grounds for this motion, mother claimed that the caretaking arrangement was to last only for one year, during which time she was to work on regaining her sobriety and establishing a stable life, which she had done. In June 2007, mother filed petitions to terminate the guardianships, based on these and other circumstances not relevant here. Grandmother opposed the motion and petitions.
Following a consolidated evidentiary hearing, the court found that mother had done good work to address her addictions and other issues and was now able to perform parenting tasks in a responsible manner. Nevertheless, the court denied both mother's petitions and her motion to modify. In reaching this conclusion, the court applied the best interest standard set forth in section 15-14-210, C.R.S.2008, to mother's request to terminate the guardianships and the endangerment standards set forth in sections 14-10-129 and 14-10-131, C.R.S.2008, to her motion to modify parenting time and decision-making. Finding that the best interests of the children would be served by "preserving the stability the children have known for years," the court determined that grandmother should remain the primary residential caretaker with sole decision-making authority. The court did, however, modify mother's parenting time by adopting the parenting plan proposed by the child and family investigator (CFI), which incorporated consistent, regular, and unsupervised parenting time as long as mother maintained her sobriety.
Mother now appeals.

II. Notice
Mother first contends that the original order allocating parental responsibilities is void and not binding on her because she did not receive proper notice of the proceedings leading to it. We disagree.
If a judgment is entered without sufficient notice to the respondent, such judgment offends due process, and it must be vacated upon request. See Don J. Best Trust v. Cherry Creek Nat'l Bank, 792 P.2d 302, 305 (Colo.App.1990).
Here, although mother contends that grandmother never served her with a copy of the original petition and that she had no knowledge or notice of the proceeding, it is undisputed that she joined in the petition as co-petitioner and thus knew of and sought the same relief requested by grandmother. Hence, she consented to the allocation of parental responsibilities entered by the court and appears to have abided by it without any previous challenge. In these circumstances, we conclude that any such due process violation has been waived. See Columbine Valley Constr. Co. v. Bd. of Dirs., 626 P.2d 686, 693 (Colo.1981) (due process rights to notice and hearing prior to entry of a civil judgment are subject to waiver); Norquist v. Norquist, 89 Colo. 486, 491, 4 P.2d 306, 307 (1931) (defendant waived his personal jurisdiction objection by failing to assert it until approximately five months after the court entered the order at issue).
We do not address mother's additional contention that her rights continued to be violated by grandmother's failure to provide notice of additional court proceedings because mother has not challenged on appeal any other specific orders arising from such proceedings. To the extent mother relies on sections 14-13-105 and 14-13-205(1), C.R.S. 2008, of the Uniform Child-Custody Jurisdiction and Enforcement Act, we note that the parties and the court invoked that Act only *1109 for a short time, when grandmother temporarily left the state with the children, and that issue is not before us on mother's appeal.

III. Standards Applicable to Mother's Motion and Petitions
Mother next contends that the trial court erred by applying the best interest and endangerment standards without according her the parental preference required under the Due Process Clause arising from her fundamental rights as a biological parent. We disagree.

A. The Legal Framework
In Troxel v. Granville, 530 U.S. 57, 72-73, 120 S.Ct. 2054, 2063-64, 147 L.Ed.2d 49 (2000) (plurality opinion), the Supreme Court struck down a statute that placed no limit on the class of persons who could petition for visitation. In that case, paternal grandparents petitioned for visitation with their grandchildren, who had been born out of wedlock to the grandparents' late son and the children's mother. The mother had asked the grandparents to limit the amount of time that they were visiting the grandchildren, and the grandparents filed their petition, which the trial court granted. The plurality found that Washington's visitation statute, which allowed any person to petition for visitation rights of children at any time, whenever such visitation might serve the best interests of the children, was "breathtakingly broad." Id. at 67, 120 S.Ct. at 2061. The plurality further concluded that this statute unconstitutionally infringed on the protected liberty interest of natural parents in the care, custody, and control of their children by permitting a court to disregard or override a parent's wishes based solely on the trial judge's personal view of the children's best interests. Id. Specifically, the plurality observed that a fit parent is presumed to act in the best interests of his or her children and that "if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." Id. at 68-70, 120 S.Ct. at 2061-62. Therefore,
so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.
Id. at 68-69, 120 S.Ct. at 2061 (plurality opinion); accord In re Adoption of C.A., 137 P.3d 318, 324-25 (Colo.2006).
Troxel was concerned with judicial interference in the day-to-day child-rearing decisions of fit, custodial parents. See In re Guardianship of L.V., 136 Cal.App.4th 481, 38 Cal.Rptr.3d 894, 902 (2006). It did not address situations in which the parent no longer has custody. See id. ("The decisions in Troxel and its California progeny have no application to this case because they dealt with judicial interference in the day-to-day child-rearing decisions of a fit, custodial parent. Here, the parents no longer had custody of the minor. A guardianship had been established and the guardians had provided the minor with day-to-day custody and care for several years.") (emphasis in original).
In contrast to Troxel, in Quilloin v. Walcott, 434 U.S. 246, 255-56, 98 S.Ct. 549, 555, 54 L.Ed.2d 511 (1978), the Supreme Court rejected the constitutional claim of a biological father who opposed the adoption of his child by the child's stepfather. The biological father argued that, in the absence of a finding of his unfitness as a parent, he had a constitutional right to veto the adoption. Id. at 252, 98 S.Ct. at 553. The Court disagreed, stating:
We have little doubt that the Due Process Clause would be offended "[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest." But this is not a case in which the unwed father at any time had, or sought, actual or legal custody of his child. Nor is this a case in which the proposed adoption would place the child with a new set of parents with whom the child had never before lived. Rather, the *1110 result of the adoption in this case is to give full recognition to a family unit already in existence, a result desired by all concerned, except [the biological father]. Whatever might be required in other situations, we cannot say that the State was required in this situation to find anything more than that the adoption, and denial of legitimation, were in the "best interests of the child."
Id. at 255, 98 S.Ct. at 555 (quoting Smith v. Organization of Foster Families, 431 U.S. 816, 862-63, 97 S.Ct. 2094, 2119, 53 L.Ed.2d 14 (1977) (Stewart, J., concurring); other citations omitted).
Similarly, in In re M.N.G., 113 S.W.3d 27, 33 (Tex.App.2003), the court found Troxel inapplicable in a case involving a request to modify custody because the purposes of the modification statute were different from those of non-parental visitation statutes like that at issue in Troxel. Specifically, the court noted that non-parental visitation statutes presume fitness of the custodial parent. Id. Modification statutes, on the other hand, do not do so, because "[i]n the modification context, the State has a compelling interest to protect the child's need for stability and to prevent constant litigation in child custody cases." Id. at 33, 36; see also L.V., 38 Cal.Rptr.3d at 904 ("Another factor that must be considered is the law's recognition of the importance of continuity and stability in a child's living arrangements."); cf. In re E.L.M.C., 100 P.3d 546, 558 (Colo.App.2004) ("Accordingly, we further conclude that, consistent with existing federal limitations on a parent's fundamental right to direct the upbringing of the child, proof that a fit parent's exercise of parental responsibilities poses actual or threatened emotional harm to the child establishes a compelling state interest sufficient to permit state interference with parental rights.").
In In re Guardianship of L.V., 38 Cal. Rptr.3d at 902-04, the court considered a case that is substantially similar to the case before us. There, the parents of a minor were experiencing various difficulties. The parents separated, and the father moved away. Thereafter, the mother became ill and placed the minor in the care of the minor's aunt and uncle. The parents subsequently reconciled but were living far away. The aunt and uncle ultimately filed a petition seeking appointment as the minor's guardians, which the parents did not oppose. After the minor had been with her guardians for approximately three years, however, the parents petitioned to terminate the guardianship. The parents and the guardians agreed on a visitation schedule by which the minor could begin the process of returning to her parents. When the visits went poorly and the minor objected to being returned to her parents' custody, the guardians decided to oppose termination of their guardianship. The trial court denied the parents' petition, and the parents appealed.
The California Court of Appeal affirmed the trial court's decision. The court first rejected the parents' claim that, under Troxel, because they were able to provide minimally adequate food, clothing, shelter, and guidance for the minor, their fundamental rights as biological parents required the trial court to return the minor to their custody, and application of a best interest of the child standard to their petition was unconstitutional. Id. at 901. The court held that Troxel and the California cases that followed it were inapplicable because those cases dealt with judicial interference in the day-to-day child-rearing decisions of fit, custodial parents. In the case before it, the parents no longer had custody of the minor. Rather, a guardianship had been established, and the guardians had provided the minor with day-to-day care for several years. Id.
The court further observed:
The parents have not cited, and we have not discovered, any Supreme Court decision, state or federal, that holds expressly or by necessary implication that natural parents have an automatic right to termination of a guardianship absent an express finding of their unfitness to care for the child, or that otherwise precludes the application of a "best interest of the child" standard to the termination of a guardianship.
Id. at 903.
The court next noted the need to consider "the law's recognition of the importance of *1111 continuity and stability in a child's living arrangements." Id. at 904. The court stated:
Thus, "the paramount need for continuity and stability in custody arrangements  and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker  weigh heavily in favor of maintaining ongoing custody arrangements."
Id. (quoting In re Marriage of Burgess, 13 Cal.4th 25, 51 Cal.Rptr.2d 444, 913 P.2d 473, 478-79 (1996)).
Applying each of these factors to the case before it, the L.V. court held:
Here, although the parents had a biological link to the minor, they relinquished their day-to-day parental relationship with her when mother voluntarily placed the minor with the uncle and aunt because the parents were unable to provide adequate care for her. Then, the parents did not oppose having the uncle and aunt named to be the minor's guardians. Because the parents were no longer participating in the day-to-day parenting of the minor, they were not entitled to the constitutional protection afforded to parents who are acting in that role.
L.V., 38 Cal.Rptr.3d at 904. The court thus concluded that "constitutional protections did not require the trial court to find anything more than that it was in the best interest of the minor not to terminate the guardianship," which the trial court did. Id.
Numerous other courts have reached the same conclusion in circumstances like those present here. See, e.g., Ex parte McLendon, 455 So.2d 863, 865 (Ala.1984) (presumption in favor of natural parent does not apply after a voluntary forfeiture of custody or a prior decree that transfers care of the child to a non-parent; to reclaim custody, the natural parent will have to show that the proposed change will materially promote the child's welfare); Jones v. Strauser, 266 Ark. 441, 585 S.W.2d 931, 932 (1979) (father's consent to agreement giving custody of child to grandparents diminished his parental preference such that he bore the burden of showing that a modification of the existing arrangement was warranted based on the child's welfare); Grant v. Martin, 757 So.2d 264, 266 (Miss.2000) (adopting new standard that a natural parent who voluntarily relinquishes custody of the minor child, through a court of competent jurisdiction, forfeits the right to rely on the natural parent presumption; standard prevents irresponsible parents who have ceded the care of their child for the sake of convenience from reclaiming custody years later simply by relying on the presumption with no required showing that such change would be in the child's best interest); Guinta v. Doxtator, 20 A.D.3d 47, 794 N.Y.S.2d 516, 521 (2005) (parental preference applies in an original custody determination until extraordinary circumstances are found; subsequent proceedings for modification should focus on stability and are subject to the best interests standard); Price v. Howard, 346 N.C. 68, 484 S.E.2d 528, 534 (1997) (parent no longer enjoys a paramount status if he or she has engaged in conduct inconsistent with the responsibilities attendant to rearing a child, and application of the best interest standard in such a case does not offend due process); Blair v. Badenhope, 77 S.W.3d 137, 147-48 (Tenn.2002) (a parent who has been afforded the opportunity to assert superior parental rights in the initial custody proceeding cannot later claim the parental preference in a subsequent proceeding to modify custody); see also In re C.C.R.S., 892 P.2d 246, 257 (Colo.1995) (holding that in a custody dispute between biological and psychological parents, the best interests of the child standard is the prevailing determination).
Significantly, Colorado's statutory scheme concerning modifying guardianships or allocations of parental responsibility reflects the concerns for providing children with a stable environment that are discussed in the cases noted above. Thus, petitions to terminate guardianships are determined in accordance with the best interests of the children. § 15-14-210(2), C.R.S.2008. In the context of motions to modify allocations of parental responsibility that are more likely to impact the stability of a child's life  such as motions that will move a child from one home to another or alter who has the right to make decisions for a child  the General Assembly *1112 has adopted even more stringent requirements. For example, section 14-10-129(1)(a)(I), C.R.S.2008, provides that a court may modify parenting time whenever doing so "would serve the best interests of the child." Section 14-10-129(2), C.R.S.2008, however, prohibits a court from modifying a prior order concerning parenting time that substantially changes the parenting time and the party with whom the child resides a majority of the time, absent certain additional findings. In particular, such a modification may not be made unless the court also determines, among other things, that the child's present environment "endangers the child's physical health or significantly impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." § 14-10-129(2)(d), C.R.S.2008.
Similarly, section 14-10-131(2)(c), C.R.S. 2008, prohibits a court from modifying a decree allocating decision-making responsibility unless it finds that (1) the retention of the existing allocation would endanger the child's physical health or significantly impair his or her emotional development, and (2) the harm likely to be caused by making the change is outweighed by the advantage of a change to the child.
The party seeking a modification in these circumstances has the burden of proving that the statutory standards justifying the change are present. In re Marriage of Davis, 43 Colo.App. 302, 304, 602 P.2d 904, 905 (1979). The applicable standard of proof is a preponderance of the evidence. L.L. v. People, 10 P.3d 1271, 1276-77 (Colo.2000); People in Interest of A.R.D., 43 P.3d 632, 635 (Colo. App.2001).
In view of our reading of Troxel and the Colorado statutory scheme discussed above, we are persuaded by the reasoning of L.V. and the other cases like it cited above. Accordingly, we hold that where a parent's role as day-to-day caregiver of a minor is relinquished through contested or uncontested judicial proceedings and with no indication by the court that the relinquishment was intended to be temporary, the parent has enjoyed and exercised his or her fundamental rights. We further hold that subsequent application of the statutory standards for terminating guardianships or modifying allocations of parental responsibility, which standards certainly allow a court to consider the relationship between the biological parent and the child, does not violate the parent's constitutional rights. To hold otherwise would effectively afford a parent who relinquishes his or her day-to-day parenting responsibilities through judicial processes a substantial, if not automatic, right to terminate a guardianship or modify an allocation of parental rights with no regard for the perhaps significant impact on his or her children. For the reasons set forth above, such a result would contradict Colorado's statutory scheme, which carefully balances a parent's fundamental rights against the significant interests of his or her children in a safe and stable environment.

B. Application to this Case
Applying the foregoing principles here, we disagree with mother's assertion that application of the traditional standards for terminating guardianships and modifying allocations of parental responsibility, including the burden of establishing grounds for termination or modification by a preponderance of the evidence, violated her fundamental right to parent her children. Here, mother invoked the jurisdiction of the court and relinquished her rights to the care, custody, and management of her children when she joined in grandmother's petition for custody and for an allocation of parental responsibilities. Moreover, nothing on the face of the court's orders granting the guardianships and allocating parental responsibilities indicated that the orders were temporary. In fact, the children have been in grandmother's care since 2003. In these circumstances, mother exercised her fundamental rights and subjected herself to Colorado's statutory scheme for terminating the guardianships or modifying the allocation of parental responsibilities. Accordingly, the trial court's application of the settled statutory standards governing mother's petition and motion, including the corresponding burden *1113 of proof, did not violate mother's constitutional rights.
The cases on which mother relies are inapposite. Abrams v. Connolly, 781 P.2d 651, 657-58 (Colo.1989), for example, was not a custody dispute. Rather, the issue before the court was whether the noncustodial parent remained liable for child support to the child's guardians after the custodial parent died.
In re Pedrick, 111 Colo. 141, 144-45, 137 P.2d 1019, 1020 (1943), involved a petition by a grandmother to obtain custody of her grandchildren, who, unlike in the present case, were residing with their parents. In that context, where the issue involved removing custody from fit parents, the court noted that courts generally will not deprive a parent of custody unless it is clearly shown that he or she is so unfit as to endanger the child's welfare. Id. at 145, 137 P.2d at 1020. Notably, the court also recognized the prevailing rule, consistent with our decision today, that the primary and controlling factor in any custody decicion is the interest and welfare of the children. Id. at 144, 137 P.2d at 1020.
In In re Davis, 656 P.2d 42, 44 (Colo.App. 1982), a father sought to obtain custody of his child from the father's stepfather. After noting that the overriding concern was the best interests of the child, the division held that the trial court applied the wrong standard in assessing the father's petition. Id. Because the original custody order was temporary, the division held that the matter should have been resolved through application of the standards for permanent custody. Id. This case, too, is fully consistent with our determination that prevailing statutory standards apply to biological parents in petitions to terminate guardianships.
Straub v. Straub, 209 Mich.App. 77, 530 N.W.2d 125, 127 (1995), also supports our determination here. In Straub, a mother petitioned to change custody from the child's grandparents to her, and the trial court denied the petition. The mother appealed. The appeals court held that the mother had the burden of proving that the modification was in the child's best interests. Id. Although the court noted that the best interest factors were equal between the parties and thus it appeared that the trial court's conclusion was correct, the court held that the trial court's finding that the parties understood the guardianship to be permanent was contrary to the undisputed evidence at trial. Id. Thus, the court reversed and remanded to the trial court for reconsideration in light of the applicable facts. Id. Here, unlike in Straub, the trial court clearly considered the nature of the agreement between mother and grandmother and thus correctly applied the best interests analysis in light of the evidence presented.
Finally, we acknowledge that Heltzel v. Heltzel, 248 Mich.App. 1, 638 N.W.2d 123 (2001), cited by mother, reaches a conclusion contrary to ours. In that case, on facts similar to those present here, the court determined that, under Troxel, placing on a mother the burden of proving that changing her child's custody from the child's grandparents to her infringed her fundamental liberty interest in raising her child. For the reasons set forth above, we respectfully disagree with the Michigan court's interpretation of Troxel and, thus, with the decision in Heltzel.
In sum, we reject mother's contention that the trial court violated her fundamental rights to parent her children by imposing on her the statutory burdens of establishing grounds to terminate the guardianships at issue and to modify the existing allocation of parental responsibilities by a preponderance of the evidence. Moreover, the record clearly demonstrates that the court appropriately applied the statutory standards and carefully balanced both mother's rights as the children's biological parent and the substantial rights of the children in a safe and stable environment.

IV. Child and Family Investigator (CFI)
Mother next contends that the trial court erred by relying on the recommendations of the CFI because he was biased, based his recommendations largely on hearsay and information not in evidence at hearing, and did not give her the benefit of the parental presumption in forming his recommendations. We perceive no error.
*1114 A CFI appointed by the court is to investigate, report, and make recommendations as specifically directed in the appointment order, taking into consideration the relevant factors for determining the best interests of the child set forth in section 14-10-124, C.R.S.2008. § 14-10-116.5, C.R.S.2008; CJD 04-08.
Contrary to mother's position, the record reflects that the CFI maintained his objectivity as required, and any information he shared with the parties was properly used to encourage them to settle their differences. CJD 04-08 standard 3 (comment). Not only did the CFI comply with the requirements of CJD 04-08 and the mandate he was under to assist the court, but also his report demonstrates that he conducted his investigation and formed his recommendations in a thorough and balanced manner. Further, the CFI was subject to cross-examination, and, although the CFI is expected to be familiar with the applicable legal standards, CJD 04-08 standard 6 (comment), it was the function of the court to weigh his recommendations pursuant to the appropriate standards to determine whether they were in the children's best interests. See In re Marriage of McNamara, 962 P.2d 330, 334 (Colo.App.1998) (court is free to reach its own conclusions and is not required to follow the evaluator's recommendations). Finally, mother fails to identify any specific hearsay statements or facts outside the record on which the CFI relied or how such reliance impacted either the CFI's recommendations or the trial court's order. Even if the CFI did rely on the hearsay statements of others or facts that were not in evidence, however, such reliance was consistent with the CFI's duties to the court and did not render his opinion incompetent. See CJD 04-08 standard 8 ("The CFI shall collect data and conduct an investigation sufficient to allow the CFI to provide competent opinions."); CJD 04-08 standard 8 (comment) ("A CFI should use methods of data collection that are consistent with accepted professional standards."); see also Quintana v. City of Westminster, 56 P.3d 1193, 1198-99 (Colo.App.2002) (CRE 703 permits an expert to base his or her opinion on facts and data made known to the expert before or during the hearing, even if those facts and data are not admissible in evidence).
For these reasons, we are satisfied that the trial court did not abuse its discretion by relying on the CFI and his recommendations. See In re Custody of C.J.S., 37 P.3d 479, 482-83 (Colo.App.2001) (no abuse of discretion in the trial court's approval of the special advocate's recommendations where those recommendations were based upon the best interests standard).

V. Contempt
Finally, mother contends that the court erred by not finding grandmother in contempt for removing the children from Colorado and by refusing to impose sanctions. Because the record does not show that mother filed a motion or citation for contempt or requested sanctions, we do not address this issue. See Washburn v. Thomas, 37 P.3d 465, 468-69 (Colo.App.2001) (arguments not presented to, considered by, or ruled upon by a trial court may not be raised for the first time on appeal).
For the foregoing reasons, the order is affirmed.
Judge RUSSEL and Judge MÁRQUEZ[*] concur.
NOTES
[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S.2008.